**UNITED STATES of America for the Use and Benefit of VERMONT MARBLE COMPANY, a corporation, Plaintiff,**

v.

**ROSCOE–AJAX CONSTRUCTION CO., Inc., a corporation, et al., Defendant.**

**Civ. A. No. 43683.**

United States District Court
N. D. California, S. D.

Sept. 10, 1965.

---

Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., Francis C. Hutchens, Robert D. Raven and George F. Clinton, San Francisco, Cal., for plaintiff.

J. W. Ehrlich, San Francisco, Cal., Edward F. Dullea, San Francisco, Cal., for defendant.

WOLLENBERG, District Judge.

The Miller Act proceeding has been instituted under the provisions of Title 40 U.S.C.A. § 270a et seq. by the United States for the use of plaintiff, Vermont Marble Company, a corporation, against defendants Roscoe-Ajax Construction Company, et al. The plaintiff as subcontractor is claiming sums allegedly due and owing under a written subcontract agreement entered into with the general contractor Roscoe-Ajax in connection with a construction project in the City and County of San Francisco, State of California. (Contract No. GS–09B–C–1021 SF, November 10, 1960). The United States District Court for the Northern District of California was chosen by plaintiffs on the basis of 40 U.S.C. § 270b which provides in part:

> "Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed *and not elsewhere* * * *." [Emphasis Added].

It is conceded that this Court is the proper place of trial under the statute as set out above. However, defendants Roscoe-Ajax have filed a Motion for Change of Venue,[1] praying that the action be transferred from the Northern District of California to the United States District Court for the District of Columbia. Defendants assert that under paragraph 45 of the printed form contract provided by them, and signed by the parties, that the plaintiffs have waived local venue and validly agreed to bring all claims arising out of the contracts in the District of Columbia. The

---

1. Defendants in their motion, pleadings, and other moving papers do not state explicitly whether they are praying for a transfer under 28 U.S.C. § 1404(a) or dismissal under Federal Rules of Civil Procedure 12(b). The holding in this case would be equally applicable to either motion.

pertinent parts of paragraph 45 of the form contract reads as follows:

"The rights of the parties shall be construed pursuant to the laws of the District of Columbia. The subcontractor agrees that it will not commence any action, whether in law or in equity, against the contractor or its sureties because of any matter whatsoever arising out of the alleged breach or performance of this subcontract agreement, in any Courts other than those in the District of Columbia and the subcontractor expressly waives any and all rights the said subcontractor might have by reason of the aforesaid bond provisions * * * to bring said action in any other court."

The issue presented by the motion of the defendants is whether the parties by contract may validly enter into a binding agreement which by its terms prohibits the laying of venue in the district which otherwise is expressly required to be the proper exclusive venue by the terms of the Miller Act, i. e., the district where the contract was to be performed. It is important to note that paragraph 45 of the form contract is not an attempt merely to *confer* jurisdiction on an additional court which would not naturally have proper jurisdiction, National Equipment Rental, Limited v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1963); rather it is an attempt by contract to *oust* a court of its jurisdiction to adjudicate a dispute arising in its geographic area. Thus the cases cited by the defendants in its brief such as National Equipment Rental, Limited v. Szukhent, supra, and Kenny Construction Co. v. Allen, 101 U.S.App.D.C. 334, 248 F.2d 656 (1957) are clearly distinguishable since they deal with attempt to *confer* jurisdiction by appointment of agent for service of process or otherwise.

Secondly, the Arbitration cases, in particular Electronic and Missile Facilities, Inc. v. United States for Use of Mosely, 306 F.2d 554 (5th Cir) [2], are equally inapplicable in the present action. The Electronic and Missile Facilities case and the other arbitration case holdings are based on the strong public policy of the United States Arbitration Act to effectuate and enforce arbitration clauses in contracts. It is one thing to enforce an agreement which selects the type of adjudicative machinery which the parties must employ to settle disputes; it is quite another matter to permit the parties to give exclusive preference to one court over another in direct conflict with an express congressional directive in the Miller Act. Public policy as expressed in the Arbitration Act favors the former; it is harshly skeptical of the latter.

Having distinguished the two lines of cases cited by defendants, the question still remains whether the provisions in paragraph 45 of the form contract are valid and if valid, whether they are reasonable provisions in the setting of this particular case.

A survey of the cases reflects a divergence of views among the courts as to the validity of a clause in an agreement which purports to bar litigation of future causes of action arising therefrom except in a specified court. The more general rule and prevailing majority view seems to be that such contractual provisions are void at their inception as a vio-

2. In the Electronic and Missiles Facilities case it was held by the Court of Appeals for the Fifth Circuit that the Miller Act cases could not proceed and that the subcontractor was required to arbitrate in New York on a controversy arising out of a construction project in Georgia.

The Supreme Court in reversing the Electronics and Missile Facilities, 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963) case on other grounds cast serious doubts on the thrust of the Fifth Circuits' opinion. Chief Justice Warren and Justice Black in a concurring opinion, by way of dictum, specifically referred to the serious public policy questions which the majority opinion avoided as to whether the policy of the Arbitration Act should be held to override the interests of subcontractors and suppliers under the Miller Act so far as venue and other Miller Act rights are concerned.

lation of public policy in seeking to oust courts other than those specified of the jurisdiction which would otherwise be theirs. United States v. Leahy, 148 F.2d 462, 467 (3rd Cir. 1945); Carbon Black Export v. The S.S. Monrosa, 254 F.2d 297 (5th Cir. 1958); 17 C.J.S. Contracts § 229, p. 1069; 56 A.L.R.2d 300 (1957); 14 Am.Jur., Courts, § 196, pp. 389–390.

The defendants, however, point to a recent line of cases which have enunciated a minority view (See 1 Moore's Federal Practice, par. 0.140 [1.–3] (2d Ed. 1964) and 56 Am.Jur. § 41); that while the parties by agreement cannot oust a court of jurisdiction otherwise obtaining, such court may, if *the agreement is reasonable,* decline jurisdiction and relegate a litigant to the forum to which he assented. Wm. H. Muller & Co. v. Swedish American Line, Ltd., 224 F.2d 806, 808, 56 A.L.R.2d 295 (2d Cir. 1955); cert. den. 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955); Aetna Insurance Co. v. The Satrustegui, 171 F.Supp. 33 (San Juan D. Puerto Rico, 1959); Cerrocle De Pasco Copper Corp. v. Knut Knutsen, 187 F.2d 990 (2nd Cir. 1951); Restatement Contracts (1932) § 558.

This court does not find it necessary to choose between the majority or minority view in this case. For even if it were to adopt the minority view enunciated in the Wm. H. Muller & Co. v. Swedish American Line, Ltd., line of cases, (i. e., that such agreements are valid if reasonable) this court is convinced that the venue provision in paragraph 45 of the form contract is unreasonable per se in the context of the Miller Act directives.

Accord MacBride, J. in U. S. for Use and Benefit of M.G.M. Construction Corp. v. Aetna Casualty and Surety, 38 F.R.D. 418 (No. District of California, 1965).

The statutory venue provision set forth in 40 U.S.C.A. § 270b (b) does not merely establish the place of performance as a place of permissible venue. It contains the unequivocal phrase *"and not elsewhere".* This court is unwilling to disregard the exclusive nature of this phrase as mere verbiage and to entertain arguments as to the reasonableness vel non of the contractual arrangement. The venue agreement in paragraph 45 of the contract runs head on into a direct legislative fiat to the contrary. For this reason the contractual provision must fall as it is violative of public policy. United States v. Murtaugh 190 F.2d 407 (4th Cir. 1951); Kaiser Fraser v. Otis & Co., 195 F.2d 838 (2d Cir. 1952).

■ The venue provisions of 270b must be construed as mandatory to protect subcontractors on federal work projects.[3] United States for Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957); St. Paul-Mercury Indemnity Co. v. United States, for Use of Jones,[4] 238 F.2d 917 (10th Cir. 1956). This holds true whether the particular agreement in issue is a contract of adhesion or an agreement between two industrial giants. For the language of the statute, its legislative history and the ensuing judicial interpretations all indicate that the proviso *"and not elsewhere"* embodies a different and stronger public policy than normally in-

---

3. This court is convinced that at least one of the primary objectives of the draftsmen of the Miller Act was to assure that actions be brought in the District in which the construction project was located. In this manner every subcontractor, no matter how small is guaranteed local forum and the opportunity to bid on federal projects, and the general contractor, no matter how small is protected against harassment in distant forums by powerful subcontractors. Furthermore, in the greater number of cases the convenience of both parties and the access to evidence would be facilitated by adjudication in the District where the contract was performed. See generally The Application of the United States Arbitration Act to Miller Act Suite, 50 Virginia Law Review, pp. 105–140.

4. "The purpose of the Miller Act is to secure those who furnish labor and materials for public works. Its provisions are to be liberally construed to carry out its purposes." St. Paul Mercury Indemnity Co. v. United States for Use of Jones supra, p. 925.

heres in the usual statutory venue privilege created for the benefit of a defendant. In the Miller Act the venue provision is non-waivable; it is a jurisdictional requirement. United States for Use and Benefit of Fairbanks Morse & Co. v. Bero Construction Corporation, 148 F.Supp. 295 (D.C.1957), United States for Use and Benefit of Greenville Equipment Co. v. United States Casualty Company, 218 F.Supp. 653 (D.C.1962). United States v. Congress Construction Co., 222 U.S. 199, 32 S.Ct. 44, 56 L.Ed. 163 (1911) [Heard Act], United States for Use of Dillingham v. McCarty, 174 F.Supp. 629 (D.C.1959); Contra Texas Construction Co. v. United States for Use of Caldwell Foundry & Mach. Co., 5 Cir., 236 F.2d 138.

▪ This court is further persuaded to deny defendant's motion for change of venue because of the practical problems attendant upon dismissal or transfer of the instant proceeding.[5] If this action were dismissed and plaintiffs relegated to the Federal District Court for the District of Columbia there is no guarantee that the District of Columbia court would entertain the case. If that court were to view the venue provision of the Miller Act Section 270b as jurisdictional and exclusive, United States for Use and Benefit of Fairbanks Morse & Co. v. Bero Construction Corp., supra; United States, for Use and Benefit of Greenville Equipment Co. v. U. S. Casualty Co., supra; United States for Use of Dilling-

ham v. McCarty, supra, but see Texas Construction Co. v. United States, for Use of Caldwell Foundry and Machinery Co., supra, then plaintiffs would be without a forum. Furthermore, no transfer is available under 28 U.S.C. § 1404(a) which provides only that a district court may transfer a civil case to a district *"where it might have been brought"* (Emphasis ours).

The landmark case of Blaski et al. v. Hoffman, 7 Cir., 260 F.2d 317, affirmed 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254, held that the power of a district court under Section 1404(a) may not be predicated on the waiver of one of the parties, in this case the defendant, but is solely dependant upon whether the transferee district is one in which the action might have been originally brought by the plaintiff. It follows from what this court has stated above that the only district in which the action may properly be brought under the Miller Act is the Northern District of California and, for the purposes of transfer under Section 1404(a), the parties cannot by their contract prescribe a different jurisdiction as the jurisdiction where such action "might have been brought". American Fire and Casualty Co. v. Finn, 341 U.S. 6, at p. 16, 71 S.Ct. 534, at p. 541, 95 L.Ed. 702 (1954); People's Bank v. Calhoun, 102 U.S. 256, 260–261, 26 L.Ed. 101.

It is therefore, ordered, that the defendant's motion for change of venue be, and the same is hereby, denied.

---

5. The case before this court involves the construction of marble work in the new federal building in San Francisco. Other subcontractors involved in the same project have suits pending against Roscoe-Ajax, the contractor in this district. In some of these suits a motion to transfer under paragraph 45 was not made.

If this case were dismissed or transferred to the District of Columbia, then two different district courts might be dividing the same bond which in turn might not cover the entire amount of the claims asserted. It is this type of confusion which section 270b eliminates as herein construed.