SYRO STEEL COMPANY, Plaintiff v. HUBBELL HIGHWAY SIGNS, INC.,
PROPST CONSTRUCTION COMPANY and SEABOARD SURETY COM-
PANY, Defendants

No. 914SC1109

(Filed 5 January 1993)

1. **Estoppel § 25 (NCI4th)— equitable estoppel—misrepresentation
—knowledge or means to acquire knowledge**

Defendant Propst Construction Company did not satisfy
the essential elements necessary to assert a claim of estoppel,
and summary judgment was properly granted for plaintiff,
where defendant Propst was the contractor on a highway proj-
ect; defendant Hubbell Highway Signs was a subcontractor;
plaintiff Syro Steel Company supplied guardrail material to
Hubbell for use on the project; Propst received notice that
Hubbell owed Syro $37,231.25 for guardrail material; Propst
contacted Syro's credit manager and inquired as to whether
Propst could pay Hubbell the amount owed for the subcontract
work; Propst was told that it was okay to pay Hubbell and
Propst subsequently released payment to Hubbell; Syro ini-
tiated a contract action against Hubbell and sought recovery
against Propst and Seaboard Surety under the payment bond
upon failure to receive payment; and the trial court entered
summary judgment for Syro for the full amount of its claim.
The statement by Syro's credit manager that it would be okay
to pay Hubbell cannot be construed as a misrepresentation
because there is no evidence that Syro intended to relinquish
its rights under Propst's payment bond if Hubbell failed to
pay, there is no indication that Syro induced Propst to make
payment to Hubbell, and Propst knew that its obligations under
the contract payment bond would be invoked if Syro failed
to receive payment.

Am Jur 2d, Estoppel and Waiver §§ 35, 40-41.

Comment note—Quantum or degree of evidence necessary
to prove an equitable estoppel. 4 ALR3d 361.

2. **Liens § 21 (NCI4th); Principal and Surety § 9 (NCI3d)— highway
construction—material delivered to site and to warehouse—
recovery under contractor's payment bond**

The trial court did not err by granting summary judgment
for plaintiff Syro and by denying defendants' motion for a

SYRO STEEL CO. v. HUBBELL HIGHWAY SIGNS, INC.

[108 N.C. App. 529 (1993)]

summary judgment where Syro brought an action on a payment bond for materials furnished to a subcontractor on a highway construction project and the contractor contended that Syro was not entitled to recover under the payment bond for materials which were neither delivered to the project site nor utilized under the prime contract. Neither actual delivery of material to the prime contract job site nor incorporation of the material into the work affects a materialman's right to recover under the contractor's payment bond. It is only necessary that the materialman sold and delivered the materials to the subcontractor in good faith and under the reasonable belief that these materials were for ultimate use under the prime contract. N.C.G.S. § 44A-25 *et seq.*

**Am Jur 2d, Contractors' Bonds §§ 75, 77.**

**Labor or material furnished subcontractor for public work or improvement as within coverage of bond of principal contractor. 92 ALR2d 1250.**

Appeal by defendants Propst Construction Company and Seaboard Surety Company from order and judgment entered 15 August 1991 by Judge Napoleon B. Barefoot in Duplin County Superior Court. Heard in the Court of Appeals 21 October 1992.

Propst Construction Company ("Propst") entered into a contract with the Department of Transportation to perform work on a highway project in Duplin County. In accordance with N.C.G.S. § 44A-25 *et seq.*, Propst provided a payment and performance bond for the project. Seaboard Surety Company was the surety under the bonds.

In March 1988 Propst entered into a subcontract with Hubbell Highway Signs, Inc., ("Hubbell") for the supply and installation of steel beam guardrails, highway signs and other highway materials necessary for the construction of the highway project. Plaintiff Syro Steel Company ("Syro") supplied guardrail material to Hubbell for use on the project. In September 1989 Syro delivered 6,250 feet of steel beam guardrails to Hubbell at Hubbell's Charlottesville warehouse. This material was not used on the Duplin County project. That same month, Syro delivered another 6,250 feet of steel beam guardrails to Hubbell at the project site.

SYRO STEEL CO. v. HUBBELL HIGHWAY SIGNS, INC.

[108 N.C. App. 529 (1993)]

In December 1989 Propst received notification from Syro that Hubbell owed Syro $37,231.25 for guardrail material, and that Syro was providing Propst with statutory notice of Syro's claim. Approximately one week later, Bill Beck of Propst contacted E.W. Cantor, Syro's credit manager and the author of Syro's notice of claim, and inquired as to whether Propst could pay Hubbell the amount owed for the subcontract work. At that time, Propst owed Hubbell an amount in excess of that claimed by Syro against Hubbell. In response, Mr. Cantor told Mr. Beck that it was "o.k." to pay Hubbell. Propst subsequently released payment to Hubbell.

Upon failure to receive payment, Syro initiated a contract action against Hubbell and also sought recovery against defendants under the payment bond. Both Syro and defendants moved for summary judgment. The trial court entered summary judgment in favor of Syro for the full amount of its claim, $37,231.25, to which defendants Propst and Seaboard Surety Company take exception.

> Kennedy, Covington, Lobdell & Hickman, by Wayne P. Huckel and Cory Hohnbaum, for plaintiff appellee.

> Johnston, Taylor, Allison & Hord, by John B. Taylor and Greg C. Ahlum, for defendant appellants Propst Construction Company and Seaboard Surety Company.

WALKER, Judge.

Defendants bring forward primarily two assignments of error for this Court to consider on appeal. They argue: (1) Syro is barred from recovering against Propst's payment bond on the grounds of equitable estoppel, since Syro authorized Propst to pay Hubbell; and (2) the trial court erred in determining that Syro is entitled to recover the full amount of its claim against Propst's payment bond when a genuine issue of material fact exists as to whether all of the materials for which payment is sought were actually delivered to the project.

[1] Defendants contend that Syro should be barred from recovering against Propst's payment bond on the grounds of equitable estoppel, since Propst sought and acquired authorization from Syro to pay Hubbell after becoming aware of Syro's claim against Hubbell. Defendants contend that they relied on the statement of Syro's credit manager, Mr. E.W. Cantor, that it was "o.k." for Propst

to pay Hubbell, and that if Syro had not given such an authorization, Propst would have retained the funds owed to Hubbell in order to honor Syro's claims against its payment bond. In this regard, Mr. Cantor's statement misled and prejudiced Propst by inducing Propst to release funds that it would have used to protect itself from Syro's claim against the payment bond. Furthermore, defendants argue that by allowing Syro to seek payment under the payment bond, they are in effect required to pay for the same materials twice.

The doctrine of equitable estoppel requires that the party sought to be estopped: "(1) misrepresented or concealed material facts; (2) intended that such misrepresentation or concealment be acted upon by the other party; and (3) had knowledge, actual or constructive, of the true facts." *Neal v. Craig Brown, Inc.*, 86 N.C.App. 157, 163-164, 356 S.E.2d 912, 916, *disc. review denied*, 320 N.C. 794, 361 S.E.2d 80 (1987). The party asserting estoppel must have: "(1) a lack of knowledge and the means to acquire knowledge as to the real facts in question; and (2) relied to his prejudice upon the conduct of the party sought to be estopped." *Id.* After having reviewed the record, however, we cannot conclude that the facts of this case satisfy the elements enunciated in *Neal* so as to raise a question of equitable estoppel.

The statement by Syro's credit manager that it was "o.k." for Propst to pay Hubbell cannot be construed as a misrepresentation. There is no evidence that, in making this statement, Syro intended to relinquish its rights under Propst's payment bond if Hubbell failed to pay, or that this statement raised an inference of any such intention. *See J.W. Cross Industries, Inc. v. Warner Hardware Company, Inc.*, 94 N.C.App. 184, 379 S.E.2d 649, *disc. review denied*, 325 N.C. 271, 384 S.E.2d 515 (1989). There is also no indication that Syro induced Propst to make payment to Hubbell. *See Neal v. Craig Brown, Inc., supra.* Propst was obligated to pay Hubbell under the subcontract for all work performed, and this duty was independent from any claim Syro had against Hubbell. Thus, Syro's assertion that it was "o.k." to pay Hubbell neither altered nor misrepresented Propst's pre-existing legal duty to Hubbell pursuant to the contract.

In addition, the party asserting estoppel must lack knowledge and the means to acquire knowledge as to the real facts in question. This Court has stated that estoppel is not available to protect

a party from the consequences of its own negligence. *Five Oaks Homeowners Association, Inc., v. Efirds Pest Control Co.*, 75 N.C.App. 635, 331 S.E.2d 296 (1985). In the instant case, Propst entered into the contract payment bond which provided in part that "if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract . . . then this obligation to be void; otherwise to remain in full force and virtue." Insofar as the language of this contract is unambiguous, Propst cannot deny knowledge of its terms. *Id.* Propst knew that its obligations under the contract payment bond would be invoked if Syro failed to receive payment for its materials and labor, and by the letter dated 18 December 1989, Syro informed Propst of its outstanding balance of $37,231.25. Thus, Propst cannot satisfy the essential elements necessary to assert a claim of estoppel.

[2] By their second argument, defendants contend that the trial court erred in granting summary judgment and in determining that Syro was entitled to recover the full amount of its claim against Propst's payment bond when a genuine issue of material fact existed as to whether all of the materials for which payment was sought were actually delivered to the project. The purchase order submitted by Hubbell to Syro called for 500 pieces of guardrail material (at 25 feet per piece) for a total of 12,500 linear feet of guardrail material. It is undisputed by Syro that 6,250 feet of steel beam guardrails were delivered to Hubbell's Charlottesville warehouse and that an additional 6,250 feet of steel beam guardrails were delivered to the project site. The question, then, is whether Syro is entitled to recover under the payment bond for materials which were neither delivered to the project site nor utilized under the prime contract.

Defendants analogize this case to those involving mechanics' liens pursuant to Article 2, Chapter 44A of the North Carolina General Statutes, which requires that material be delivered to the project site in order to enforce a lien on a private project. *See Queensboro Steel Corp. v. East Coast Machine & Iron Works, Inc.*, 82 N.C.App. 182, 346 S.E.2d 248, *disc. review denied*, 318 N.C. 508, 349 S.E.2d 865 (1986). They contend that any recovery under the payment bond should be limited to the 6,250 feet of guardrails actually delivered to the project site, and that Syro should not be allowed to assert a claim for the 6,250 feet of material delivered to the Charlottesville warehouse. Defendants argue,

therefore, that summary judgment was improperly granted in favor of Syro for the full amount of its claim because an issue of fact exists as to the amount of guardrail material supplied by Syro that was actually delivered to the project site.

North Carolina law prohibits the attaching of liens, such as mechanics' liens, on public projects. *American Bridge Division United States Steel Corp. v. Brinkley*, 255 N.C. 162, 120 S.E.2d 529 (1961). Article 3, Chapter 44A of the North Carolina General Statutes thereby requires a payment bond on public projects exceeding $50,000 in order to afford suppliers with a form of security equivalent to that of a lien. *See* N.C.G.S. § 44A-25 *et seq.* Although there is little North Carolina case law interpreting these statutes, this Court has noted that guidance can be obtained through federal case law, where the federal courts have interpreted a parallel statute, 40 U.S.C. § 270 *et seq.* (the "Miller Act"). *See Symons Corp. v. Insurance Company of North America*, 94 N.C.App. 541, 380 S.E.2d 550 (1989); *Noland Company, Inc. v. Poovey*, 58 N.C.App. 800, 295 S.E.2d 238 (1982).

Like its North Carolina counterpart, the Miller Act requires government contractors to furnish a payment bond for the protection of subcontractors and other persons supplying labor and materials for the project. *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 1 L.Ed.2d 776 (1957). Federal case law interpreting this Act has consistently held that a materialman may recover under a payment bond regardless of whether the materials were actually delivered to the job site or used on the project. *See United States ex rel. Balzar Pacific Equipment Co. v. Fidelity & Deposit Company of Maryland*, 895 F.2d 546 (9th Cir. 1990); *United States ex rel. Lanahan Lumber Co., Inc. v. Spearin, Preston & Burrows, Inc.*, 496 F.Supp. 816 (M.D. Fla. 1980); ("[D]elivery to the jobsite or actual use in the prosecution of the work is immaterial to a right of recovery."); *United States ex rel. Carlson v. Continental Casualty Co.*, 414 F.2d 431 (5th Cir. 1969) ("It is immaterial to his right of recovery that the materialman deliver the materials to the jobsite or that such materials actually be used in the prosecution of the work."); *United States ex rel. Color Craft Corp. v. Dickstein*, 157 F.Supp. 126 (E.D.N.C. 1957) ("Neither delivery of the material to the prime contract job site nor actual incorporation of the material into the work is required.") Furthermore, these cases state that the appropriate test for determining if a supplier of materials on a public project can recover against the prime

**SYRO STEEL CO. v. HUBBELL HIGHWAY SIGNS, INC.**

[108 N.C. App. 529 (1993)]

contractor's payment bond is whether the supplier has sold and delivered material to the subcontractor in good faith and under the reasonable belief that it was intended for ultimate use under the prime contract. *See United States ex rel. Carlson v. Continental Casualty Co., supra; United States ex rel. Color Craft Corp. v. Dickstein, supra.*

In light of the similarities between and parallel purposes of the Miller Act and N.C.G.S. § 44A-25 *et seq.*, and the recognition of such by this Court, we find these federal cases to be instructive as to our analysis of N.C.G.S. § 44A-25 *et seq.* For this reason, we find that neither actual delivery of material to the prime contract job site nor incorporation of the material into the work affects a materialman's right to recover under the contractor's payment bond. In order for a materialman who furnishes a subcontractor with materials for use on a public project to recover against a prime contractor's payment bond pursuant to N.C.G.S. § 44A-25 *et seq.* it is only necessary that the materialman sold and delivered the materials to the subcontractor in good faith and under the reasonable belief that these materials were for ultimate use under the prime contract.

In the instant case, there is evidence from which the court could find that Syro delivered the material to Hubbell in good faith and under the reasonable belief that the material was intended for use on the project. The purchase order submitted by Hubbell to Syro states:

> Note: This material is for use on North Carolina Dept. of Transportation project #:8.1223348/49; our Job #: VN-808 in Duplin County and must conform to all standards and specifications thereof. Certifications must accompany material shipment.

> Delivery address will follow at a later date.

The address for Hubbell is listed as Charlottesville, Virginia. Syro's invoice to Hubbell for material shipped to Charlottesville recites Duplin County project 8.1223348/49 within its description. Defendants have failed to present any evidence which indicates that Syro should have had reasonable grounds to believe that materials shipped to the Charlottesville warehouse were not intended for the Duplin County project site. Neither the purchase order nor the invoices would put Syro on notice that the materials were intended for use other than on the project such that Syro could not have

acted in good faith. We therefore conclude that the trial court did not err in granting summary judgment in favor of Syro for the sum of $37,231.25, which includes materials shipped to Duplin County and to Charlottesville. Additionally, the trial court did not err in denying defendants' motion for summary judgment. We note, however, that the cross-claim alleged by defendant Propst against Hubbell remains viable.

AFFIRMED.

Judges GREENE and WYNN concur.