**UNITED STATES, on Behalf of CAL'S A/C and Electric**

v.

**The FAMOUS CONSTRUCTION CORPORATION and Capital Indemnity Corporation**

**No. CIV. A. 97–0830–A.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Nov. 6, 1997.

William L. Melancon, Lafayette, LA, for Plaintiff.

Jennifer L. Anderson, Gary Field et al., Baton Rouge, LA, for Defendants.

## AMENDED RULING

NAUMAN S. SCOTT, District Judge.

This matter is before the court on a Rule 12(b)(3) motion by defendant, The Famous Construction Corporation (hereafter "Famous"), to dismiss the complaint of plaintiff, Cal's A/C and Electric (hereafter "Cal's A/C"), on grounds of improper venue, or, in the alternative, to transfer the case to federal district court in Travis County, Texas.

The Famous Construction Company, a Texas corporation domiciled in Austin, Texas entered into a contract with the United States of America, through the Veteran's Administration, to complete a construction project at the Veteran's Administration Hospital in Pineville, Louisiana. Capital Indemnity Corporation (hereafter, "Capital"), a Wisconsin corporation domiciled in that state, acted as surety. As general contractor on the project, Famous subsequently sub-contracted a portion of the mechanical and electrical work to Cal's A/C, a sole proprietorship operating out of Alexandria, Louisiana. Alleging that Famous has failed to fulfill certain obligations under their form subcontract, Cal's A/C filed this Miller Act, 40 U.S.C. § 270a, *et seq.* suit in the Western District of Louisiana seeking recovery of monies due for work performed, lost profit, and various other damages.

It is well established that the Miller Act is intended to protect the interests of subcontractors. The act was drafted to provide an alternate remedy to protect subcon-

tractors who supply labor or materials to a general contractor on a federal construction project. *See F.D. Rich Co. v. Industrial Lumber Co.*, 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161–62, 40 L.Ed.2d 703 (1974); *accord United States ex rel. R. Rudnick & Co. v. Daniel, Urbahn, Seelye & Fuller*, 357 F.Supp. 853, 859 (N.D.Ill.1973) ("the purpose of the [Miller] [A]ct is to protect subcontractors"); *United States ex rel. Vermont Marble Co. v. Roscoe–Ajax Constr. Co.*, 246 F.Supp. 439, 443 n. 3 (N.D.Cal.1965) ("at least one of the primary objectives of the draftsmen of the Miller Act was to assure that actions be brought in the District in which the construction project was located. In this manner, every subcontractor, no matter how small is guaranteed local forum and the opportunity to bid on federal projects.") [1]

■ The Supreme Court has held that "the Miller Act should receive a liberal construction to effectuate its protective purposes." *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216, 77 S.Ct. 793, 796, 1 L.Ed.2d 776 (1957). It is hardly necessary, however, to apply a liberal construction to the text of 40 U.S.C. § 270b(b) to conclude that, to benefit sub-contractors, this section of the Miller Act lays exclusive, non-waivable venue in the federal district court in which the project is located. Indeed, such a conclusion is well-nigh inescapable when the intent of the drafters is considered in conjunction with the express statutory mandate that Miller Act suit shall be brought in the district in which the project is located "and not elsewhere." The statutory language and legislative history "indicate that the proviso land not elsewhere' embodies a different and stronger public policy than normally inheres in the usual statutory venue privilege created for the benefit of a defendant." *Vermont Marble*, 246 F.Supp. at 442–43. Section 270b(b) does not merely establish the district of the construction project as a permissible venue; to the contrary, it specifies that district as the exclusive, mandatory venue for Miller Act suit.

Famous' form subcontract lists fourteen pages replete with instances of that contractor's sole and unconditional right to take certain actions depriving the subcontractor's right to contest the reasonableness of the contractor's position. An examination of this document discloses that the entire instrument is laced with such instances. One such instance is paragraph:

14A. INDEMNIFICATION:
SUBCONTRACTOR agrees to save and hold CONTRACTOR, its employees, directors, agents and representatives, harmless and to indemnify the same from any and all claims, damages, liability, injuries, loss and expenses, of any kind or nature, including, without limitation, attorney's fees and court costs which CONTRACTOR may incur, arising out of, or attributed directly or indirectly to., SUBCONTRACTOR's performance of the work herein required or in connection with SUBCONTRACTOR's compliance with the terms and conditions as herein stated.

Another is paragraph:

15. ANTICIPATORY BREACH OF CONTRACT:
Any time that the SUBCONTRACTOR, either verbally or in writing, refuses to follow directions of the CONTRACTOR, this action will be considered an Anticipatory Breach of Contract whereby CONTRACTOR shall have full power and authority to take immediate actions as described in the "BREACH OF CONTRACT" provision of this AGREEMENT, without requirement of the seventy-two (72) hour notice as specified therein.

A third is paragraph:

34. ADDITIONAL SUBCONTRACTOR REQUIREMENTS AND AGREEMENT CLARIFICATIONS:
D. This AGREEMENT and any claims arising under it shall be governed *by the laws of the State of Texas and exclusive venue shall be in Travis County, Texas, unless stipulated otherwise by CONTRACTOR (at its sole discretion).*

(*Defendant's Rule 12(b)(3) Motion To Dismiss*, Exhibit A, at 13.)

---

1. We have not discussed the venue advantages guaranteed by the Miller Act. We are satisfied that they are substantial since paragraph 34 of Famous' form agreement attempts to clothe Famous with these advantages in direct violation of the Miller Act.

This form subcontract is an example of the economic tyranny practiced by such out of state contractors as Famous. It illustrates both the need for and the purpose of the Miller Act.[2] As we have shown above, the Miller Act was adopted by Congress as an additional cause of action to protect the subcontractors, employees, suppliers and other persons who are parties to federal construction projects. 40 U.S.C. § 270b is an integral and a foundational part of that cause of action. It provides in pertinent part:

> Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and *not elsewhere*.

■ This contract was drafted exclusively by Famous. Paragraph 34 as well as other paragraphs are ambiguous and all such ambiguities should be interpreted against the drafter, Famous. There is no way that Cal's A/C, on the date that the suit was filed (April 29, 1997), by reading this contract, could determine that the law of Texas should apply or whether the suit should be filed in the federal district court of Travis County, Texas. Famous has never exercised its exclusive discretion. In fact, the only way that Famous could exercise its exclusive discretion is by filing the suit against itself as a Miller Act plaintiff. We hold that paragraph 34 of the contract is not only ambiguous, it is contrary to the public policy of the United States under the Miller Act and is therefore null and void. We hold that this suit was properly filed in the United States District Court for the Western District of Louisiana and that laws of the State of Louisiana (the construction site) will apply. To do otherwise would allow Famous to utterly emasculate and repeal the Miller Act by contract.

Famous' motions to dismiss the action pursuant to 28 U.S.C. § 1406(a), or to transfer the suit to the federal district court in Travis County, Texas pursuant to § 1404(a), are **DISMISSED**.

---

2. We have omitted any discussions of the law of Louisiana since it is to the same effect as that of the Miller Act.