McCLURE ESTIMATING COMPANY, A NORTH CAROLINA GENERAL PARTNERSHIP, PLAINTIFF
v. H. G. REYNOLDS COMPANY, INC. AND SAFECO INSURANCE COMPANY OF
AMERICA, DEFENDANTS

No. COA98-1552

(Filed 21 December 1999)

**1. Appeal and Error— appealability—improper venue**

The denial of defendants' motion to dismiss for improper venue was immediately appealable because the erroneous denial would work an injury which could not be corrected if an appeal was not allowed before the final judgment.

**2. Venue— performance bond—county where construction performed**

The trial court erred by denying defendants' motion to dismiss for improper venue a payment bond claim arising from a

McCLURE ESTIMATING CO. v. H. G. REYNOLDS CO.

[136 N.C. App. 176 (1999)]

construction contract, and the case was remanded for transfer of venue, where defendant Reynolds entered into a contract with the Warren County School System for the construction of additions at schools; Reynolds subcontracted with plaintiff for the roof systems; plaintiff performed several steps in the preparation of the roof systems in Martin County; a dispute arose over the final payment; and plaintiff brought an action in Martin County. Although N.C.G.S. § 44A-28(a) states that actions on payment bonds shall be brought in the county where the contract or any part thereof has been performed, the statutory definitions, the plain language, the context, and the federal case law all support the interpretation that the "contract" is the prime contract and that "any part thereof" refers to contracts which physically span more than one county. The prime contract here was performed in Warren County.

Appeal by defendants from order entered 23 June 1998 by Judge Clifton W. Everett, Jr. in Martin County Superior Court. Heard in the Court of Appeals 20 September 1999.

*Barber & Associates, P.A., by Timothy C. Barber and Sean T. Partrick, and Pritchett, Cooke & Burch, P.L.L.C., by Jonathon E. Huddleston, for plaintiff-appellee.*

*Safran Law Offices, by V. A. Anderson, Jr. and Todd A. Jones, for defendants-appellants.*

TIMMONS-GOODSON, Judge.

On 19 May 1995, H. G. Reynolds Company, Inc. ("defendant") entered into a contract with the State of North Carolina through its political subdivision, the Warren County School System, for the construction of additions at three Warren County schools ("the project"). Defendant was the general contractor on the project. On 30 May 1995, defendant entered into a Labor and Material Payment Bond Agreement in the amount of $3,303,600.00 for which defendant was principal, codefendant Safeco Insurance Company of America ("Safeco") was surety and the Warren County Board of Education was obligee.

In December of 1995, defendant entered into an oral subcontract with McClure Estimating Company ("plaintiff") whereby plaintiff agreed to design and construct sloping metal roof systems on the three Warren County Schools for a contract price of $315,052.38.

Plaintiff performed several steps of the roof construction at his office in Martin County. The design and preparation of the roof system were performed in Martin County, the trim flashing and roof curbs were cut, welded and fabricated in Martin County and approximately 50% of the architectural trim was cut, welded and fabricated in Martin County. Plaintiff completed construction of the roof systems. Defendant refused to pay plaintiff the final $27,101.61 due on the contract. Defendant alleges that the roof constructed by plaintiff resulted in repeated leaks, damages and delays in completion of the project in accordance with the contract. Additionally, Safeco refused to honor its obligations on the payment bond.

Plaintiff filed a summons and complaint, asserting a payment bond claim and alleging breach of contract and Quantum Meruit. Defendants filed an Answer, Counterclaim and Motions to Dismiss or in the Alternative, to Remove to Warren County, asserting that the payment bond claim was brought in the wrong county. Plaintiff filed an Answer to Defendants' Counterclaim and an Amended Answer to Defendants' Counterclaim. Defendants filed an Amended Motion to Dismiss and an Amended Motion to Compel Arbitration and Stay Proceedings Pending Arbitration.

A hearing was held on 1 June 1998 in which plaintiff alleged that venue was correct in Martin County. The trial court denied defendants' Motion to Dismiss, stating that venue was proper in Martin County. Defendants appeal.

The dispositive issue on appeal is whether a payment bond claim may be brought in the county where some portion of a subcontract was performed. By their first assignment of error, defendants argue that the trial court committed reversible error in denying defendants' Motion to Dismiss plaintiff's payment bond claim because that claim was brought in the incorrect county. We agree.

[1] We first address plaintiff's argument that defendants' Motion to Dismiss Due to Improper Venue is premature in that it is interlocutory and does not affect a substantial right. We disagree and conclude that defendants' Motion to Dismiss is directly appealable.

In *DesMarais · v. Dimmette*, 70 N.C. App. 134, 318 S.E.2d 887 (1984), this Court held that an order denying a Motion for Change of Venue was directly appealable. "We hold that an erroneous order denying a party the right to have the case heard in the proper court would work an injury to the aggrieved party which could not be cor-

rected if no appeal was allowed before the final judgment." *Id.* at 136, 318 S.E.2d at 889. In the case *sub judice,* an order erroneously denying defendants' Motion to Dismiss for Lack of Venue would similarly "work an injury . . . which could not be corrected if no appeal was allowed before the final judgment." *Id.* Therefore, we conclude that an appeal lies of right to this Court.

**[2]** This is a case of first impression in North Carolina. Under the North Carolina Model Payment and Performance Bond Act, otherwise known as North Carolina's "Little Miller Act," "[e]very action on a payment bond . . . shall be brought in a court of appropriate jurisdiction in a county where the construction contract or any part thereof is to be or has been performed." N.C. Gen. Stat. § 44A-28(a) (1995).

The federal Miller Act requires payment bond claims to be brought in "any district in which the contract was to be performed and executed and not elsewhere." 40 U.S.C.A. § 270b (West Supp. 1998). When the North Carolina General Assembly adopted the Act, it added the phrase "or any part thereof." N.C.G.S. § 44A-28(a).

Defendants argue that the statutory language within section 44A-28(a), "the construction contract," refers to the prime contract, or the contract between the general contractor and the owner of the project. *Id.* Therefore, defendants contend that venue is proper only in the county where the prime contract was performed. According to defendants, the statutory language "or any part thereof" speaks to the situation where the construction of public improvements contemplated by the prime contract physically spans more than one county. *Id.*

In contrast, plaintiff argues that the language "the construction contract" addresses subcontracts as well as the prime contract. *Id.* Plaintiff further argues that the addition of the phrase "or any part thereof" in the North Carolina Model Act demonstrates legislative intent that venue be proper outside the county where the prime contract was performed. *Id.* In other words, under plaintiff's interpretation, venue would be proper not only where the contract between the general contractor and the owner of the project was performed, but also where some portion of a subcontract was performed.

In the instant case, plaintiff argues that venue is proper in Martin County because plaintiff performed several steps in the process of constructing the roof systems in its Martin County office. Specifically,

all roof system design as well as the cutting and welding of trim flashing and roof curbs was performed in Martin County.

In determining whether the statutory language, "the construction contract," in section 44A-28(a) of Article 3 refers only to the prime contract, we first look to the applicable statutory definitions. *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 203 (1974). The statutory definitions control within Article 3 unless the context requires otherwise. N.C. Gen. Stat. § 44A-25 (1995). "Construction contract" is defined as "any contract for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highways." N.C.G.S. § 44A-25(2). The definition of "construction contract" is ambiguous. The words "any contract" do not necessarily refer to the prime contract exclusively. Yet, the definition does not explicitly include subcontracts.

A subcontractor is defined as "any person who has contracted to furnish labor or materials to, or who has performed labor for, a contractor or another subcontractor in connection with a construction contract." N.C.G.S. § 44A-25(6). In other words, pursuant to section 44A-25(6), the subcontractor enters into a contract, best termed a "subcontract," to "furnish labor or materials . . . in connection with a construction contract." *Id.* The statutory language suggests that "the construction contract" is a single overarching contract.

A "contractor" is defined as "any person who has entered into a construction contract with a contracting body." N.C.G.S. § 44A-25(4). "Contracting body" means "any department, agency, or political subdivision of the State of North Carolina which has authority to enter into *construction contracts.*" N.C.G.S. § 44A-25(3). Pursuant to the statutory definitions, a construction contract is a contract between a contractor and the State, otherwise known as the prime contract. In the case at bar, defendant, the contractor, entered into such a contract with the State of North Carolina through its political subdivision, the Warren County School System.

Where the statutory definitions are ambiguous, the words must be given their ordinary meaning. *In re Clayton-Marcus Co.*, 286 N.C. at 219-20, 210 S.E.2d at 202. The plain meaning of the language within North Carolina General Statutes section 44A-28(a) supports an interpretation that "the construction contract" refers to the prime contract. N.C.G.S. § 44A-28(a). Use of the definite article "the" suggests that the legislature referred to one specific contract, the prime

contract, rather than all of the subcontracts entered into on a given project.

The statutory definition of "construction contract" within section 44A-25 must be read within context. N.C.G.S. § 44A-25. The addition of the definite article "the" prior to the words "construction contract" within section 44A-28(a) is a significant limiting term. N.C.G.S. § 44A-28(a).

This Court has determined that the court will look to the federal Miller Act where there is no corresponding state case regarding North Carolina General Statute sections 44A-25 *et seq. Syro Steel Co. v. Hubble Highway Signs, Inc.*, 108 N.C. App. 529, 534, 424 S.E.2d 208, 211 (1993). Overwhelmingly, federal courts have held that venue is proper where the project which is the subject of the prime contract is located. *See, e.g., United States ex rel. Vermont Marble Co. v. Roscoe-Ajax Constr. Co.*, 246 F. Supp. 439 (N.D. Cal. 1965); *United States ex rel. Caswell Equipment Company v. Fidelity and Deposit Company of Maryland*, 494 F. Supp. 354 (D. Minn. 1980); *United States ex rel. Essex Machine Works, Inc. v. Rondout Marine, Inc.*, 312 F. Supp. 846 (S.D.N.Y. 1970); *United States ex rel. Coffey v. William R. Austin Company, Inc.*, 436 F. Supp. 626 (W.D. Okla. 1977); *United States ex rel. Harvey Gulf International Machine, Inc. v. Maryland Casualty Company*, 573 F.2d 245 (5th Cir. 1978); *McDaniel v. University of Chicago*, 512 F.2d 583 (7th Cir.), *vacated*, 423 U.S. 810, 46 L.Ed.2d 30 (1975); *United States ex rel. Capolino Sons v. Electronic & Missile Facilities, Inc.*, 364 F.2d 705 (2nd Cir. 1966); and *United States ex rel. Cal's A/C v. Famous Construction Corporation*, 982 F. Supp. 1219 (W.D. La. 1997).

Plaintiff relies on one federal case, *United States ex rel. Expedia, Inc. v. Altex Enterprises, Inc.*, 734 F. Supp. 972 (M.D. Fla. 1990), in which the court held that a bond claim was properly brought in Florida where work on a construction project was performed and delivered rather than in Bermuda where the project was located. In *Expedia*, the plaintiff had performed nearly all of the subcontract in Florida; only the installation took place in Bermuda. Additionally, the facts of *Expedia* depart from the norm in that the project was located in Bermuda, outside of the territorial United States. The ruling in *Expedia* is in conflict with prior and subsequent federal court rulings and we decline to follow it in the instant case.

We conclude that statutory definitions, the plain language, context and federal case law support an interpretation that "the con-

struction contract" addressed in section 44A-28(a) is the prime contract. N.C.G.S. § 44A-28(a). It follows that "any part thereof" also refers to the prime contract. *Id.* Therefore, we agree with defendant's contention that the legislature included the language "any part thereof" in contemplation of a construction contract which physically spans more than one county. For example, where the physical improvement is a highway which crosses county lines, venue would be proper in any of the counties in which the project is located.

In interpreting ambiguous statutory language, this Court should avoid a construction which will lead to "unjust, oppressive, or absurd consequences." *Young v. Whitehall Co.*, 229 N.C. 360, 367, 49 S.E.2d 797, 802 (1948). If this Court were to interpret "or any part thereof" to include the subcontractor's portion of the work, an unjust result would be reached in that any subcontractor or supplier who contributed to the completion of the prime contract could file a payment bond claim in any county in North Carolina where a small portion of the work was performed. A general contractor would be forced to defend multiple claims in counties throughout the state all related to the same public project. Judicial resources would be wasted and an injustice to the general contractor would ensue.

Finally, we agree with defendants that *Midsouth Const. Co. v. Wilson*, 71 N.C. App. 445, 322 S.E.2d 418 (1984), is not controlling in the case at bar. In *Midsouth*, the construction project was located in Mecklenburg County. The general contractor brought a breach of contract claim against a subcontractor on the project in Harnett County. The subcontractor answered the complaint in Harnett County, and filed a bond claim against the general contractor in Mecklenburg County as well as a Motion for Change of Venue to move the plaintiff's original breach of contract claim to Mecklenburg County. The court ruled against the subcontractor, finding that the general contractor had properly brought the breach of contract claim in Harnett County. The subcontractor's bond claim, however, was properly filed in Mecklenburg County where the project was located.

In the instant case, plaintiff did not merely bring a breach of contract claim against defendants but also brought a claim against the payment bond. The holding in *Midsouth* regarding proper venue for a breach of contract claim does not expand venue for claims against the payment bond and we decline to expand it now. We conclude that the holding in *Midsouth* does not control the issue in the instant case of whether the claim against the payment bond should have been brought in Warren County where the project was located.

Where a defendant makes a Motion to Dismiss for Lack of Venue and indicates that venue is proper elsewhere, and venue is indeed proper elsewhere, the trial court should treat the Motion to Dismiss as a Motion for a Change of Venue. *Coats v. Hospital*, 264 N.C. 332, 141 S.E.2d 490 (1965).

In the present case, defendants made a Motion to Dismiss for Lack of Venue in which they indicated that venue was proper in Warren County rather than Martin County. Plaintiff filed a complaint in Martin County where some portion of the subcontract was performed. However, the prime contract was performed in Warren County. Having determined that plaintiff's bond claim was brought in the incorrect county, we conclude that the trial court erred in failing to remove the case to Warren County.

Defendant did not seek to appeal or petition for certiorari on the interlocutory orders relating to compelling arbitration and staying the proceeding; therefore, these issues are not before us.

For the reasons stated herein, the judgment of the trial court denying defendants' Motion to Dismiss plaintiff's payment bond claim is reversed and the case is remanded for entry of an order transferring venue to Warren County.

Reversed and Remanded.

Chief Judge EAGLES and Judge MARTIN concur.