JAMES KRIDER v. R. A. RAMSAY.

*Landlord and Tenant—Sub-letting—Jurisdiction.*

1. If there are no covenants in a lease against sub-letting, the lessee may underlease, and if the under-tenant commits no breach of the covenants between the lessor and the lessee which would work a forfeiture of the lease and authorize an entry and dispossession of him by the lessor, an entry upon the land demised to the under-tenant and a dispossession of him by the lessor is a trespass.

2. Where a tenant for years, after sub-letting to a third party, and before the underlease has expired, surrenders to the landlord, the latter is guilty of a trespass in entering upon the sub-lessee.

3. In cases of sub-letting such as the above, there is no privity of estate or contract between the lessor and the under-tenant; and *therefore,* no action in substance *ex contractu* can be maintained for a wrongful entry by the landlord.

4. Prior to the act of 1876–'77, ch. 251, a Justice of the Peace had no jurisdiction in cases of tort.

(*Nance* v. *C. C. Railway Co*, 76 N. C. 9, cited and approved.)

CIVIL ACTION tried on appeal at January Special Term, 1878, of ROWAN Superior Court, before *Kerr, J.*

The plaintiff brought this action on the 25th of September, 1876, before a Justice of the Peace to recover an amount alleged to be due for work and labor done on the defendant's land, upon an implied contract; but the defendant denied his right to recover on the ground that he had made no contract with the plaintiff authorizing him to occupy the premises.

The plaintiff was a resident of Rowan county, and the defendant, of Iredell county. The defendant's land on which the work was done is situated in Rowan. The Justice's summons, with a certificate and seal of the clerk of said Court as to his authority to act, commanding the defendant to appear in Salisbury and answer, &c., was sent to the sheriff of Iredell and duly served by him. The sum-

mons was not endorsed by a Justice in Iredell.  The defendant however appeared, there was a trial before the Justice who issued the summons, and from the judgment therein an appeal was taken to the Superior Court.

*Evidence:*  The plaintiff testified that about Christmas, 1875, one William Dyson, who was living on said land, told him he had leased it in writing from the defendant for a term of five years, at an annual money rental of $150, and proposed to rent a portion of the land to the plaintiff for one year on certain terms, to which the plaintiff agreed, and thereupon entered upon the premises.  One James Ervin, a witness for plaintiff, testified that sometime in the year 1875, he heard the defendant tell Dyson that he had leased the land to him for five years; but there was no evidence that this conversation was ever reported to defendant.

The defendant in his evidence positively contradicted the statement of the last witness, and said that he had not leased the land to Dyson at all; that some time in the month of December, 1875, Dyson proposed to lease it for said term and to pay said rent, and that pending the negotiations in respect thereto he permitted Dyson to occupy one of the houses on the land; that the proposed lease was never perfected nor reduced to writing; that he expressly told Dyson if he leased the premises to him, he should not permit him to sub-let to any one, nor did he ratify the contract made by plaintiff with Dyson, nor did he know that plaintiff was occupying the land until the very day he gave him notice to quit.

It was also in evidence that in the month of March, 1876, Dyson went to plaintiff's house and told him that he had surrendered the premises to defendant; and defendant then told plaintiff that if he wished to remain he must make a contract with him, which the plaintiff declined to do.  The defendant then told plaintiff he must leave the

premises by a certain time, to which he made no objection, and accordingly did leave, as did also Dyson, a short time afterwards.

The jury rendered a verdict in favor of the plaintiff, which His Honor set aside, being of the opinion that a Justice of the Peace had no jurisdiction of the action, from which ruling the plaintiff appealed.

*Mr. W. H. Bailey*, for plaintiff, upon the question of jurisdiction argued that the distinction between the effect of appearance in cases where jurisdiction is withheld as to the subject matter and jurisdiction as to the person, is clearly pointed out in *McMinn* v. *Hamilton*, 77 N. C., 300; and the principle there laid down governs this case. *Lilly* v. *Purcell*, 78 N. C., 82.

*Mr. J. S. Henderson*, for defendant, submitted that at the time the action was brought, it not being found on contract, express or implied, a Justice had no jurisdiction, *Bullinger* v. *Marshall*, 70 N. C. 520; *Heptinstall* v. *Rue*, 75 N. C., 78; *Nance* v. *C. C. Railway Co.*, 76, N. C. 9.

BYNUM, J. In the view most favorable to the plaintiff the case is this:—The lessee of a term of five years made an underlease of a portion of the premises to the plaintiff, for one year, who entered and occupied. Afterwards and before the expiration of the term of either lessee or under-tenant, the lessee surrendred his lease to the lessor, who thereupon entered and ejected the under-tenant. The sub-tenant has brought this action against the lessor before a Justice of the Peace, and declares in contract for work and labor done upon the premises so leased to him.

Where there are no covenants in a lease against subletting, the lessee may underlease, and if the undertenant commits no breach of the covenants between the lessor and lessee which would work a forfeiture of the lease and authorize an

entry and dispossession by the lessor, an entry upon the land demised to the undertenant and a dispossession of him by the lessor is a trespass and subjects him to an action. There being here no covenant against subletting, the plaintiff by his contract with Dyson, the lessee, acquired a valid term in the premises for the time agreed on subject only to be defeated by the re-entry of the lessor or lessee for some condition of the demise broken.

Where a lessee for a term of years parts with his whole term to a third party, it is called an assignment, and the assignee thereby becomes the tenant of the original lessor and subject to all the covenants in the lease, which run with the land, just as the lessee was. The privity of estate and privity of contract still subsist between the lessor and assignee, as it did between the lessor and lessee. Taylor's Landlord and Tenant, §§ 436-37. But when a tenant makes a lease for a less number of years than his own term, it is not an assignment, but is called an underlease; and it is well settled that as between the original lessor and the undertenant there is neither privity of estate nor contract, so that between these parties no advantage can be taken of the covenants in the lease, and therefore the lessor can not sue an undertenant upon the lessee's covenant to pay rent, nor can he maintain an action for use and occupation against the undertenant unless under an agreement, as the relation of landlord and tenant does not subsist between them. *Holford* v. *Hatch*, Doug. 183; *Crusoe* v. *Bugby*, 3 Wils., 234; Strange 405; Style, 483; Taylor's L. & T., §§ 108, 448, and note, Com., Dig., cov. (e. 3.) *Kennedy* v. *Cope*, Doug. 56.

As the plaintiff committed no breach of the terms of his lease from Dyson, or of the lease from Ramsay to Dyson, it is clear that while those leases and terms subsisted, neither the lessor nor lessee had a right to enter and dispossess the undertenant. How were the rights and relations of the parties affected by the surrender of the lease by

the lessee to the lessor? Did the lessee thereby squeeze out and extinguish the term of the undertenant? By the sublease the plaintiff acquired a right or estate in the land for one year, and Dyson, the lessee, could not sell, give up, or surrender anything which did not belong to him; he could not destroy rights which had become vested in the undertenant even by a surrender of his estate in the premises to the lessor. Taylor's L & T, § 111.

The material distinction between an assignment of a term and an underlease of a part of the term is, that while the assignee is liable to the original lessor for all the obligations of the lessee by virtue of the privity of estate between them, no action lies by the lessor against an undertenant upon any covenant in the lease, because there is no privity of contract or estate between the lessor and the sublessee. After much confusion in the cases, this seems now the settled doctrine both in this country and England. See note 4 to § 16, Taylor's L & T.

When Dyson surrendered his lease to the lessor the legal effect was to merge the lesser interest into the greater, and as far as he was concerned, to end and destroy the term; but this could not affect the rights acquired by the undertenant; his interests and term continued as if no surrender had been made. A surrender is never allowed to operate injuriously upon the rights of third parties, or to affect the estate of the underlessee. Shep. Touch., 301. Such an effect even is given to a surrender that although a tenant who has made an underlease can not by a surrender prejudice the subtenant's interest, yet he will himself lose the rent he had reserved upon the underlease; for since rent is an incident to the reversion, the surrenderor can not collect it, because he has parted with his reversion to the lessor; nor can the lessor collect it, because although the reversion to which rent was incident has been conveyed to him, yet as soon as it was so conveyed, it merged in the greater reversion of

which he was already possessed, and the consequence is that the underlessee holds without the payment of any rent, exeept where otherwise it may be provided by statute. Smith's Landlord and Tenant, 232.

It was the fault of the lessor in making the lease to Dyson that he did not insert a covenant against underletting, and in accepting the surrender of the lease; it was again his fault that he made no provision to meet a contingency like this. In neither case is an innocent undertenant to suffer who is in no fault.

After the surrender the lessor refused to allow the undertenant to occupy for his term, unless he would accept new terms and a new lease from him. This the undertenant refused, and had the right to refuse, and he was therefore expelled from the premises before his term had expired. So that in no point of view had the relation of landlord and tenant ever existed between them, or any contract expressed or implied by law. He was in by a lawful title, the lessor had no right of entry, and the forcible dispossession of the plaintiff was a trespass for which he had an action. *Eten* v. *Leeyster*, 60 N. Y., 252; *Adams* v. *Godard*, 48 Maine, 212. The undertenant was therefore entitled by a proper action to recover such damages as were the direct consequence of the act of the defendant in ejecting him, but he has misconceived his action and the forum having jurisdiction. At the time this action was begun, a Justice of the Peace had no jurisdiction in cases of trespass *quare clausum fregit* or other torts. *Nance* v. *C. C. Railway Co.*, 76 N. C., 9.

The opinion of the Court proceeds upon the fact assumed, rather than established, that the original lease from the defendant to Dyson was a valid lease executed in conformity to the statute. Bat. Rev., ch. 64, § 2. How this fact was, is left in doubt in the case as stated. If the lease was not made in writing as the law prescribes, it was void, and so was the sublease as a necessary consequence. In such case the

plaintiff's remedy, if he has any cause of action, would be against Dyson, his immediate lessor.

PER CURIAM.                              Judgment affirmed.