WALLACE V. NEAL v. CRAIG BROWN, INC., AND CRAIG BROWN, JR., IN-DIVIDUALLY, AND AS AGENT FOR CRAIG BROWN, INC.

No. 8626SC1073

(Filed 16 June 1987)

**1. Landlord and Tenant § 13.2— option to renew lease—no right by sublessee to exercise**

Where the original lease was for a period of fifteen years with options to renew for successive five-year periods, and the original lessee never exercised its option to renew, plaintiff sublessee could not exercise the option to renew granted in the original lease or demand performance of the renewal option contained in the sublease. Plaintiff failed to show that a direct landlord-tenant relationship was created between plaintiff and the landlord because of the original lessee's bankruptcy where there was no evidence that the original lease was terminated by the bankruptcy. Furthermore, the instrument by which plaintiff's sublessor acquired possession was a sublease rather than an assignment of the original lease so that plaintiff did not become the landlord's tenant under terms of the original lease.

**2. Estoppel § 4.2— sublease—no estoppel to deny right to continue possession**

Defendant lessors were not estopped to deny plaintiff sublessee's right to continue in possession of the premises after termination of the original lease by failing to inform plaintiff that his occupancy was on a month-to-month basis and by permitting plaintiff to make capital improvements to the leased property where there was no evidence that defendants misrepresented any fact or that plaintiff was without means to ascertain his status as defendants' tenant; there was no indication that defendants induced plaintiff to make improvements to the property; and any action taken by plaintiff was apparently based upon his own assessment of his status with respect to the premises.

APPEAL by plaintiff from *Saunders, Judge.* Order entered 5 June 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 31 March 1987.

In this civil action, plaintiff alleges that he is in possession of premises located at 6315 South Boulevard in Charlotte pursuant to certain fixed-term lease agreements which include, *inter alia,* options to renew the lease for two additional five-year periods. He alleges that he gave proper notice of his intent to exercise his option to renew for the first additional five-year term, but that defendants have refused to recognize his rights pursuant to the option and have notified him to vacate the premises. He seeks specific performance of the alleged lease or, in the alternative, damages for its breach.

In their answer, defendants deny the existence of any written lease agreement with plaintiff and allege that he has occupied the premises as a month-to-month tenant under an oral agreement. By counterclaim, defendants seek an order requiring plaintiff to vacate the premises and damages allegedly occasioned by his refusal to do so.

Defendants moved, pursuant to G.S. 1A-1, Rule 56, for summary judgment dismissing plaintiff's action. Plaintiff moved for partial summary judgment establishing his status as a "long-term tenant" under the alleged lease agreements. The trial court granted defendants' motion, denied plaintiff's motion, and dismissed plaintiff's action. Plaintiff appeals.

*Kenneth P. Andresen for plaintiff appellant.*

*Hamel, Helms, Cannon, Hamel & Pearce, by H. Parks Helms, for defendants appellees.*

MARTIN, Judge.

Plaintiff assigns error to the entry of summary judgment dismissing his claims against defendants. He contends that genuine issues of material fact exist with respect to the nature of his tenancy in defendants' property. We affirm the judgment of the trial court.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kessing v. National Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971). The burden of establishing the lack of any triable issue of material fact is on the party moving for summary judgment. *Texaco, Inc. v. Creel,* 310 N.C. 695, 314 S.E. 2d 506 (1984). A defending party may satisfy this burden by showing that claimant cannot prove the existence of an essential element of the claim. *Bernick v. Jurden,* 306 N.C. 435, 293 S.E. 2d 405 (1982). In ruling on the motion, the trial court must carefully scrutinize the moving party's papers and resolve all inferences against him. *Kidd v. Early,* 289 N.C. 343, 222 S.E. 2d 392 (1976). The existence of questions of fact which are immaterial to the legal issues involved, however, is insufficient to defeat a motion for summary judgment. *Kessing v. National Mortgage Corp., supra.*

The record filed in this Court reflects that the evidentiary materials presented to the trial court at the summary judgment hearing consisted of the pleadings and attachments thereto as well as affidavits. These materials establish that, in 1967, Craig T. Brown, Sr. and his wife Gaynell H. Brown owned real property located at 6315 South Boulevard in Charlotte. On 25 October 1967, they entered into a written lease agreement leasing the property to 60 Minute Systems, Inc. (60 Minutes), a Florida corporation engaged in a national dry-cleaning franchise business. The term of the lease was for fifteen years, beginning upon completion of a building which the lessors were obligated to erect as a part of the lease. According to the lease, the building was to be completed no later than 15 April 1968. The lease provided for monthly rental payments of $585.00 and contained options to extend for two successive five-year periods upon written notice of intent to exercise the option given at least 90 days prior to the expiration of the preceding term.

On 30 November 1967, 60 Minutes entered into a sublease agreement with William J. Hutchison. The sublease was to commence 1 March 1968 and run through 28 February 1983 at a monthly rental of $592.00. The sublease provided for options to renew at increased rentals for two additional five-year periods commencing 1 March 1983 and 1 March 1988. Hutchison opened a retail dry-cleaning and laundry business on the premises in the spring of 1968.

Sometime during 1970, 60 Minutes filed a petition for bankruptcy with the United States Bankruptcy Court, Middle Division of Florida. 60 Minutes was subsequently adjudicated bankrupt and a trustee in bankruptcy was appointed. The record properly before us contains no further information concerning the bankruptcy proceeding.

On 7 December 1970, Hutchison assigned "all of his right, title and interest" in the sublease to plaintiff, who began operating a laundry and dry-cleaning business on the premises. Plaintiff was thereafter directed by the bankruptcy trustee for 60 Minutes to pay rent "directly to the owners of the premises." In his affidavit, plaintiff stated that he paid monthly rent of $592.00 directly to Craig Brown, Sr. and that he and Craig Brown, Sr. considered the sublease from 60 Minutes to Hutchison to be the contract governing his use of the premises.

Upon the death of Craig T. Brown, Sr. in 1974, plaintiff paid the monthly rental payments to Gaynell H. Brown. In 1975, Gaynell Brown conveyed the subject property to defendant Craig Brown, Jr., who conveyed it to defendant Craig Brown, Inc. Since 1975, plaintiff has made all monthly rental payments to defendants.

Plaintiff offered evidence tending to show that on 20 December 1982 he gave written notice to defendants that he intended to exercise the option to extend the lease for five years and that, since that time, he has paid an increased monthly rental. He also made improvements to the property, including installation of a new boiler in 1983 at a cost of approximately $6,100.00. Defendants were aware of these improvements and never intimated to plaintiff that he was anything "other than a long-term tenant" under the terms and provisions of the Hutchison lease agreement.

By affidavit, Craig Brown, Jr. stated that he has never received a notice of renewal from plaintiff, has never discussed an extension of any term with plaintiff, and has always considered plaintiff to be a tenant at will. According to the affidavit, the increase in rent from $592.00 to $630.00 per month came about as a result of negotiations with plaintiff, during which the existence of a lease was not mentioned.

On 19 August 1985, defendants notified plaintiff to vacate the premises by 1 October 1985. Plaintiff remains in possession of the premises.

[1]  Plaintiff first contends that genuine issues of fact exist with respect to the intentions of the parties and that those factual issues are material to a determination of whether the parties are obligated to each other as direct lessor and lessee pursuant to the terms and conditions of the sublease between 60 Minutes and Hutchison. In support of his contention, plaintiff asserts that 60 Minutes' adjudication in bankruptcy constituted a surrender of its lease to Brown, Sr. by operation of law and that, by his attornment to Brown, Sr. under the terms of the Hutchison sublease, he became Brown, Sr.'s direct tenant. Plaintiff further argues that the parties' "acts, acknowledgments and receipts" over the fifteen-year period of his tenancy—evidenced by his regular monthly rent payments made pursuant to the terms of the lease,

his addition of capital inprovements to the premises and his delivery of written notice of his intent to renew the lease — clearly indicate that the parties considered themselves direct lessor and lessee pursuant to the terms of the sublease.

In addressing plaintiff's contentions with respect to his status as a long-term tenant under the Hutchison sublease, it is important to note that plaintiff has presented no evidence from which one could conclude that the original lease agreement entered between 60 Minutes and Brown, Sr. was terminated by reason of 60 Minutes' bankruptcy. From the evidence properly before us, we are able to ascertain only that 60 Minutes filed a petition in bankruptcy in 1970, was adjudicated bankrupt, and that a trustee was appointed. By letter dated 9 December 1970, the trustee notified the landlords of 60 Minutes' franchisees that the franchisees were to pay rent directly to the landlords. The letter further advised the landlords that in the event of default, the trustee for 60 Minutes intended to proceed against the defaulting franchisee. The letter indicates neither a surrender nor a termination of 60 Minutes' lease by its trustee.

Plaintiff has submitted to this court, by mail and apparently in response to questions raised at oral argument, copies of certain orders, dated 26 January 1973 and signed by a referee in bankruptcy for the United States District Court, Middle District of Florida, Orlando Division, purporting to disaffirm certain executory contracts of 60 Minutes, including the lease agreement with Craig Brown, Sr. and a franchise agreement with plaintiff. These orders, however, were not made a part of the record on appeal, and plaintiff has not moved that the record be amended to include them. Moreover, there is no indication that the orders were ever placed in evidence before the trial court or otherwise presented for its consideration in ruling on the parties' motions. *See* App.R. 9(b)(5). This Court may not consider documents which have not properly been made a part of the record on appeal. *Elliott v. Goss,* 254 N.C. 508, 119 S.E. 2d 192 (1961); App.R. 9(a). We will not go outside the record. Plaintiff has failed to forecast evidence of a surrender of 60 Minutes' original lease, a necessary element in order for plaintiff to show that a direct landlord-tenant relationship under the terms of the Hutchison sublease was created between plaintiff and Brown.

At oral argument, plaintiff contended that we should find that he is defendants' tenant under the terms of the original lease from Craig Brown, Sr. to 60 Minutes. The basis for this argument is plaintiff's contention that, although labeled a sublease, the instrument by which Hutchison acquired the property from 60 Minutes was, in fact, an assignment of 60 Minutes' original lease. We disagree.

> An "assignment" is a conveyance of the lessee's entire interest in the demised premises, without retaining any reversionary interest in the term in himself. A "sublease" . . . is a conveyance of only a part of the term of the lessee, the lessee retaining a reversion of some portion of the term.

Hetrick, Webster's Real Estate Law in North Carolina, § 241 at 251 (Rev. ed. 1981). In the instrument by which 60 Minutes conveyed to Hutchison an interest in the premises, 60 Minutes retained a reversion of a brief portion of the lease term—from 28 February 1983 until the expiration of 60 Minutes' lease—and a right to reenter the premises upon default. Thus, the conveyance between 60 Minutes and Hutchison was a sublease. Hutchison, on the other hand, conveyed to plaintiff "all of his right, title, and interest" in the sublease, without retaining any reversionary interest in the term or in the premises. As Hutchison's assignee, plaintiff succeeded only to those rights which Hutchison, as sublessee, held pursuant to the sublease from 60 Minutes.

In general:

> "[P]rivity of estate" is not established between the original landlord and the sublessee and the landlord has no direct action with respect to the covenants in the original lease as against the sublessee; there is neither privity of estate nor privity of contract as between the original landlord and a sublessee, and the sublessee can sue only his immediate lessor . . . with respect to the lease.

Hetrick, supra, at 252. As a result, a sublessee may not exercise an option to renew granted to his sublessor in the original lease or demand such a renewal from the original landlord. 50 Am. Jur. 2d, Landlord and Tenant, § 1195 (1970).

In the present case, the original lease agreement provided for a lease term of fifteen years, beginning no later than 15 April

1968, and granted to 60 Minutes options to extend for two additional five-year periods upon 90 days written notice. Hutchison's sublease agreement expired 28 February 1983 and included options to renew on 1 March 1983 and 1 March 1988. 60 Minutes never exercised its option to renew the original lease at any time prior to the expiration of its fifteen-year lease term. As a general rule, the rights of a sublessee are measured by the rights of his sublessor, *Nybor Corp. v. Ray's Restaurants, Inc.*, 29 N.C. App. 642, 225 S.E. 2d 609, *disc. rev. denied*, 290 N.C. 662, 228 S.E. 2d 453 (1976), and termination of the original lease terminates any dependent sublease. 51C C.J.S., *Landlord & Tenant*, § 48(1)(a) (1968). This is true notwithstanding the fact that the sublease agreement contains options to renew. 50 Am. Jur. 2d, *Landlord and Tenant*, § 1195 (1970). As sublessee, plaintiff could neither exercise the option to extend contained in 60 Minutes' lease nor demand from defendants performance of the renewal option contained in the sublease.

In light of the foregoing discussion, the conflicting evidence with respect to whether or not plaintiff gave notice of his intent to extend the term of the lease for an additional five years is immaterial to our decision in this case, and thus, does not defeat summary judgment. *Kessing v. National Mortgage Corp.*, *supra;* *Little v. National Service Industries, Inc.*, 79 N.C. App. 688, 340 S.E. 2d 510 (1986).

[2]  By his final argument, plaintiff contends that defendants had an affirmative duty "to advise plaintiff that [they] did not consider plaintiff a tenant for a term of years when plaintiff relied on that relationship to his own detriment by making capital improvements to the leased property" and that they breached that duty by failing to object to the increase in plaintiff's monthly rent payments and by failing to inform plaintiff that his occupancy of the premises was on a month-to-month basis. Therefore, plaintiff contends, defendants are estopped to deny that he is a tenant for a term of years. We disagree.

In order to raise the question of equitable estoppel, the pleadings and the evidence generally must show that the party sought to be estopped: (1) misrepresented or concealed material facts; (2) intended that such misrepresentation or concealment be acted upon by the other party; and (3) had knowledge, actual or

constructive, of the true facts. *Blizzard Building Supply, Inc. v. Smith*, 77 N.C. App. 594, 335 S.E. 2d 762 (1985), *cert. denied*, 315 N.C. 389, 339 S.E. 2d 410 (1986). The party asserting the estoppel must have: (1) a lack of knowledge and the means to acquire knowledge as to the real facts in question; and (2) relied to his prejudice upon the conduct of the party sought to be estopped. *Id.* Generally, mere silence will not operate to create an estoppel. *Barnhardt v. Morrison*, 178 N.C. 563, 101 S.E. 218 (1919). "[I]n order to work an estoppel the silence must be under such circumstances that there are both a specific opportunity, and a real or apparent duty, to speak." *Id.* at 565, 101 S.E. at 220.

In support of his claim based on equitable estoppel, plaintiff presented evidence contained in two affidavits. In his own affidavit, plaintiff stated that he made improvements to the premises, including the installation of a new boiler in 1983, with the knowledge of Craig Brown, Jr. By affidavit of a prospective purchaser of plaintiff's business, plaintiff offered evidence that the affiant had met with plaintiff and Craig Brown, Jr. in 1983 to discuss the purchase of plaintiff's business. The affiant states that it was his understanding that plaintiff had a five to seven year lease, and that, in some unspecified manner, Craig T. Brown, Jr. "assisted in your affiant's perception that there was other than a month-to-month lease arrangement between Wallace Neal and Craig Brown." This evidence is insufficient to support a claim based on equitable estoppel as it does not support an inference that defendants misrepresented any fact or that plaintiff was without means to ascertain his status as defendants' tenant. There is no indication that defendants induced plaintiff to make improvements to the property. Any action taken by plaintiff was apparently based upon his own assessment of his status with respect to the premises, rather than anything which defendants did or said or failed to do or say. Thus, there is no basis for holding that defendants are estopped to deny plaintiff's right to continue in possession of the premises.

The entry of summary judgment for defendants is affirmed.

Affirmed.

Chief Judge HEDRICK and Judge GREENE concur.