**CHRISTENSEN v. TIDEWATER FIBRE CORP.**

[172 N.C. App. 575 (2005)]

FRANK H. CHRISTENSEN, Plaintiff v. TIDEWATER FIBRE CORP., Defendant

No. COA04-717

(Filed 16 August 2005)

**1. Landlord and Tenant— transfer of tenant's interest—sublease—no privity with landlord**

A landlord's sole remedy for unpaid rent for the balance of a lease was against the original tenant, SunShares, where the transfer agreement between SunShares and its successor conveyed less than SunShares' entire interest. The agreement was a sublease with no privity between the landlord (plaintiff) and the new tenant (defendant), and plaintiff waived his right to prior notice by depositing defendant's checks.

**2. Landlord and Tenant— damage to property—implicit in testimony**

There was sufficient evidence to support the trial court's finding (sitting without a jury) that damage to plaintiff's rental property was caused by defendant where it was implicit in plaintiff's testimony that the damage was not present before defendant occupied the property.

**3. Landlord and Tenant— award for damages by tenant—sufficiency of evidence**

There was competent evidence at a trial without a jury to support a finding as to the difference in the value of the property due to damage by the tenant, and the findings supported the conclusion and award of damages.

Appeal by defendant from judgment entered 6 January 2004 by Judge Stafford G. Bullock in Durham County Superior Court. Heard in the Court of Appeals 1 February 2005.

*Stark Law Group, by Thomas H. Stark and W. Russell Congleton, for plaintiff-appellee-cross-appellant.*

*Kennon, Craver, Belo, Craig & McKee, PLLC, by Joel M. Craig and Erin M. Locklear, for defendant-appellant-cross-appellee.*

STEELMAN, Judge.

Plaintiff was the owner of property located at 700 Mallard Avenue, Durham (the property). On 30 June, 1997, plaintiff entered

into a Lease Agreement with SunShares, Inc. (SunShares), a North Carolina nonprofit corporation which conducted curbside recycling services for the City of Durham. The term of the Lease was 1 July 1997 to 30 June 2000, with monthly rental payments of $4,716.25. Defendant is a family-owned corporation engaged in the business of recycling. In the spring of 1998, defendant learned that SunShares was unable to continue to perform recycling services for Durham. Defendant subsequently entered into a contract with Durham to perform the curb-side recycling services previously performed by SunShares. Defendant entered into an agreement with SunShares on 31 October 1998. In the Agreement, defendant agreed to pay rent on the property for the 60-day period immediately following 31 October 1998 as a temporary measure until defendant could locate another property more suitable for the operation of its business.

Plaintiff had no knowledge of the negotiations between SunShares and defendant and at no time gave explicit consent to any agreement between SunShares and defendant. The lease agreement between plaintiff and SunShares required plaintiff's prior written consent for any such agreement to be valid. Plaintiff did not become aware of defendant's use of the property until a difference in the physical appearance of the rent check was brought to his attention by his staff. Plaintiff consulted with counsel and was advised that his negotiation of the November and December rent checks precluded him from evicting defendant. Plaintiff subsequently accepted and deposited a rent check from defendant for January 1999.

Once a suitable location became available at the end of January, 1999, defendant transferred its operations away from the property. Defendant paid rent to plaintiff from 1 November 1998 through January, 1999. Defendant ceased active recycling operations on the property in late January or early February, 1999. No payments were made to plaintiff after January, 1999. Quantities of recyclable material belonging to defendant remained at the property until the middle of May, 1999, when they were removed by APB, Inc., a contractor engaged by defendant. Other, non-recyclable materials were left on the site by defendant until September of 2000. Plaintiff filed this action on 28 February 2002, seeking to recover rent due under the lease agreement and reimbursement for expenses incurred for the repair of the property and the clean-up of trash left on the premises.

The case was tried before the Honorable Stafford G. Bullock, sitting without a jury, at the 3 November, 2003 civil term of the Superior

CHRISTENSEN v. TIDEWATER FIBRE CORP.

[172 N.C. App. 575 (2005)]

Court for Durham County. Judge Bullock entered a judgment in favor of plaintiff in the amount of $66,510.50 together with interest from 1 August 1999 and costs. These damages were broken down as follows: (1) $28,297.50 plus interest from 1 August 1999 for unpaid rent for the period of 1 February, 1999 through 31 July, 1999; (2) prorated taxes for 1999 in the amount of $1,838.00 and insurance in the amount of $733.00; (3) defendant's share of the expense in changing all locks for the property amounting to $642.00; (4) the diminution in value to the property resulting from the damage done to the building and surrounding structures in the amount of $35,000.00; and (5) defendant's share of the cleanup expenses incurred by plaintiff in the amount of $190.00. From this judgment defendant appeals. Plaintiff cross-appeals.

## Defendant's Appeal

[1] Defendant first argues that the trial court erred in determining defendant assumed the lease between plaintiff and SunShares, and is obligated for additional payment of rent, as well as other obligations under the lease between plaintiff and SunShares. We agree.

Defendant failed to except to certain findings of fact made by the trial court, and they are thus binding on appeal. *In re Beasley*, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001). These facts are as follows:

- The lease between plaintiff and·SunShares ran from 1 July 1997 to 30 June 2000, and included a provision prohibiting SunShares from assigning or sub-letting its interest without the prior written approval of plaintiff.

- "The October 31, 1998 agreement between [defendant] and SunShares also provided that [defendant] assumed liability for the lease . . . but purported to limit that assumption of the lease to a period of sixty (60) days."

- "[Plaintiff] was not a party to [that agreement], had no knowledge of the agreement, and did not provide assent to even a limited assignment of the lease."

- Defendant took possession of the property on 1 November 1998, and paid rent directly to Plaintiff through January of 1999.

- Plaintiff did not realize that the rent had come from defendant, and not SunShares, until after he had negotiated the November

check. Plaintiff also negotiated the December 1998 and January 1999 rent checks from defendant without protest, though he did contact his attorney in December 1998 concerning the change in tenancy.

• Plaintiff's attorney instructed plaintiff that due to his acceptance of the first two rent checks, he was prevented from objecting to defendant's agreement with SunShares concerning the lease.

• At no time did defendant or SunShares contact plaintiff in regard to the change in tenancy.

Based on these findings of fact, the trial court made the following contested conclusions of law: 1) "[Defendant] agreed with SunShares that it was assuming the lease . . . ." And: 2) "Because [plaintiff] was not a party to the [agreement between defendant and SunShares], any attempted limitation on the term of the assumption is ineffective in the absence of proof that plaintiff knew of and accepted the limited term."

The determinative issue in the instant appeal is whether the lease agreement between SunShares and defendant constituted an assignment or a sublease.

[O]ur courts have adopted the traditional "bright line" test for determining whether a conveyance by a tenant of leased premises is an assignment or a sublease. Under this test, a conveyance is an assignment if the tenant conveys his "entire interest in the premises, without retaining any reversionary interest in the term itself." A sublease, on the other hand, is a conveyance in which the tenant retains a reversion in some portion of the original lease term, however short.

*Northside Station Assoc. P'ship v. Maddry*, 105 N.C. App. 384, 388, 413 S.E.2d 319, 321 (1992) (internal citations omitted). "If the conveyance is an assignment, 'privity of estate' is created between the original lessor and the assignee with regard to lease covenants that run with the land, and the original lessor has a right of action directly against the assignee. The original lessor has no such right against a sublessee." *Id.* at 389, 413 S.E.2d at 322.

In general: "[P]rivity of estate" is not established between the original landlord and the sublessee and the landlord has no direct action with respect to the covenants in the original lease as

against the sublessee; there is neither privity of estate nor privity of contract as between the original landlord and a sublessee, and the sublessee can sue only his immediate lessor . . . with respect to the lease.

*Neal v. Craig Brown, Inc.*, 86 N.C. App. 157, 162, 356 S.E.2d 912, 915 (1987) (citation omitted); *Krider v. Ramsay*, 79 N.C. 354 (1878).

In the instant case, SunShares and defendant executed an agreement whereby defendant agreed to "assume" SunShares' lease obligations for the months of November and December, 1998. SunShares' lease with plaintiff was not due to terminate until 30 June 2000. Thus there was no agreement by SunShares to convey its entire interest in the property to defendant. This conveyance could not be an assignment; it was a sublease.

By depositing defendant's checks, plaintiff waived his right to receive prior written notice of the sublease, and thus validated the agreement to sublet between SunShares and defendant. *See Fairchild Realty Co. v. Spiegel, Inc.*, 246 N.C. 458, 466, 98 S.E.2d 871, 877 (1957). As a sublessee of SunShares, there was no privity of estate or contract between defendant and plaintiff; defendant was not bound by the terms of the lease between SunShares and plaintiff; and plaintiff had no recourse against defendant for any violations thereof. *Neal*, 86 N.C. App. at 162, 356 S.E.2d at 915. Plaintiff's sole remedy for unpaid rent for the balance of the lease term was against SunShares. *Id.*

Defendant was liable only to SunShares pursuant to their agreement. SunShares remained liable to plaintiff for all the terms of its lease with plaintiff until its expiration. Defendant was not liable to plaintiff for the breach of any covenants in the lease, and thus was not liable to plaintiff for the payment of rent, property taxes or insurance under the lease. These portions of the trial court's judgment must be vacated.

Though defendant assigned as error the trial court's award of $642.00 for replacing locks at the property, it does not argue this assignment of error in its brief and thus it is deemed abandoned. N.C. R. App. P. Rule 28(b)(6); *Strader v. Sunstates Corp.*, 129 N.C. App. 562, 568, 500 S.E.2d 752, 755 (1998). Defendant did not assign as error the trial court's award of $190.00 to plaintiff as cleanup expenses, and thus this award is not affected by our decision. *Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991).

**[2]** Defendant next argues that the trial court erred in finding that defendant is responsible for damage to plaintiff's property. We disagree.

This argument is based upon the following assignments of error:

1. Trial Court's Finding of Fact Number 16 that the property was damaged during the course of [defendant's] occupancy on the grounds that the evidence presented was insufficient to support such a finding.

5. Trial Court's Finding of Fact Number 20 that the value of the property was decreased by damage to the structure on the grounds that the evidence presented was insufficient to support such a finding.

13. Trial Court's Conclusion of Law Number 12 that [defendant] caused damage to the structure of the building resulting in damage of $35,000.00 on the grounds that the evidence presented was insufficient to support such a conclusion.

In support of its first assignment of error, defendant argues that the evidence presented at trial was not sufficient to support the trial court's finding of fact that "[d]uring the course of [defendant]'s occupancy of the property, overhead doors on the warehouse building at Mallard Avenue were damaged, a fence was damaged and at least one truck ran into the exterior wall of the building, causing damage to the exterior wall. [Defendant] did not notify [plaintiff] of the damage and made no effort to repair the damage." Defendant further argues that the trial court's finding of fact setting the amount of the damage at $35,000.00 was based on insufficient evidence.

When a case is tried without a jury, the judge's findings of fact will be binding on appeal "absent a total lack of substantial evidence to support" them. *Pulliam v. Smith,* 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998). This is true "even though the evidence might sustain a finding to the contrary." *Knutton v. Cofield,* 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968) (citations omitted). It is the province of this Court to determine if the trial court's proper findings of fact support its judgment. *Alpar v. Weyerhaeuser Co.,* 20 N.C. App. 340, 345, 201 S.E.2d 503, 507 (1974).

At trial, plaintiff testified that he inspected the property in response to a call from American Dry Cleaners (which occupied a separate portion of the property) while defendant was operating

its business on it. In an area occupied by defendant, plaintiff observed a large hole in the side of the building, as well as severely damaged electric garage doors and damage to the gate and fence surrounding the property. Terry Weekly, who was employed by defendant and worked at the property, acknowledged that the damage to the gate and fence was caused by one of defendant's trucks. Implicit in plaintiff's testimony concerning the hole in the building and the garage doors is that this damage was not present before defendant occupied the property. We hold that this constitutes sufficient evidence to support the trial court's finding that this damage was caused by defendant.

[3] We next address defendant's fifth assignment of error. Plaintiff sold the property in April of 2001 for $235,000.00. Plaintiff testified that this amount was $35,000.00 less than his estimated value of the property, and he further offered uncontroverted testimony that this diminution in value was attributable to the damage sustained to the property while under defendant's control, and that the purchaser of the property agreed to repair the damage itself in return for a reduction in sales price.

Diminution in value is a proper measure of damage to real property. *Paris v. Carolina Portable Aggregates, Inc.*, 271 N.C. 471, 484, 157 S.E.2d 131, 141 (1967). " 'Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value.' *Highway Comm'n v. Helderman*, 285 N.C. 645, 652, 207 S.E.2d 720, 725 (1974)." *Goodson v. Goodson*, 145 N.C. App. 356, 361, 551 S.E.2d 200, 204 (2001). Because there was competent evidence at trial as to the difference in value of the property resulting from the above mentioned damage, we hold that the trial court did not err in making this finding of fact. We further hold that these findings of fact support the trial court's Conclusion of law number twelve, and its judgment and award of $35,000.00. This argument is without merit.

### Plaintiff's Appeal

In light of our holding in defendant's Appeal, plaintiff's appeal is moot.

AFFIRMED IN PART, VACATED IN PART.

Judges WYNN and HUDSON concur.