ELMORE, Judge.
This is a landlord-tenant dispute involving two leases, a master lease ("Ground Lease") and a sublease ("Sublease"). The property at issue is a grocery store building in a retail shopping center known as East Town Market Shopping Center. Appellee East Town Market, L.P. ("East Town") owns the shopping center and is both landlord and tenant under the Ground Lease, as well as sub-landlord under the Sublease. Appellant 550 Foods, LLC ("550 Foods") is the subtenant under the Sublease. Throughout the parties' dispute over 550 Foods' tenancy, 550 Foods has continued to occupy the grocery store building and operate its business without interruption or interference by East Town. Neither East Town nor 550 Foods were the original contracting parties to the Ground Lease or the Sublease relevant to this lawsuit.
550 Foods appeals the entry of the trial court's 25 August 2014 order granting declaratory judgment in favor of East Town. 550 Foods argues that the trial court should have granted declaratory judgment in its favor and/or should have granted its counterclaims, which included breach of contract, breach of the covenant of quiet enjoyment, and breach of the covenant of good faith and fair dealing. After careful consideration, we affirm the trial court's order.
I. Background
On 6 September 1985, CNC Centers, as landlord, and Winn Dixie Charlotte, Inc., as tenant, entered into the Ground Lease for undeveloped land in East Town Market Shopping Center. The Ground Lease was to operate for an initial twenty-year term, beginning in March 1987 and terminating in March 2007. However, the Ground Lease provided that at the expiration of the twenty-year term, the tenant under the Ground Lease had the option to extend the lease term for eight successive five-year periods with advance written notice to the current landlord. These extension options were required to be exercised successively. Specifically, the Ground Lease provided that "each such 5-year extension period shall be dependent upon Tenants exercise of the 5-year option period immediately preceding it. In other words, should Tenant elect not to exercise the first of the eight 5-year options accorded it herein, it may not thereafter exercise any of the remaining 5-year options provided." Importantly, the Ground Lease also provided that "[a]ny holding over by Tenant" after the expiration of the initial 20-year term or any extended term, if applicable, "shall operate and be construed as a tenancy from month to month only."
On 30 March 1987, Winn Dixie assigned its interest as tenant under the Ground Lease to Realty South Investors, Inc. On the same date, Realty South Investors, as landlord, and Winn-Dixie, as tenant, entered into a Sublease for the grocery store building. The initial term of the Sublease was "approximately twenty (20) years, expiring at midnight on July 23, 2006." Under the terms of the Sublease, at the expiration of its initial term, the tenant under the Sublease had the option to extend the term of the Sublease for six successive five-year period with six months advance written notice to the landlord under the Sublease.
By its terms, the Sublease expressly incorporated specific terms of the Ground Lease. For example, the parties agreed "to be governed by the provisions of the [Ground] Lease," and acknowledged that the Sublease "is subject to all the provisions of the [Ground] Lease." In addition, the Sublease stated that "[i]f the [Ground] Lease terminates, this Sublease shall terminate, subject to the provisions of the [Ground] Lease, and the parties shall be relieved from all liabilities and obligations under this Sublease arising after such termination ... [.]"
On 10 August 2005, 550 Foods assumed all rights, title and interest of Winn-Dixie as tenant under the Sublease. To memorialize this assignment and make other necessary changes to the Sublease, BVB Properties, as lessor under the Ground Lease, B.V. Belk, Jr., as landlord under the Sublease, and 550 Foods, as tenant under the Sublease, entered into a Sublease Amendment and Exercise of Option and Landlord and Ground Lessor's Consent to Sublease Assignment and Assumption (the "Sublease Amendment"). The Sublease Amendment primarily did three things: First, the parties acknowledged that Winn-Dixie, as tenant under the Sublease, transferred its interest to 550 Foods, who agreed to assume, observe and perform "each and every one of the terms, covenants and conditions of the Sublease[;]" second, it reflected that 550 Foods exercised its first option to extend the term of the Sublease for five years, making the new expiration date for the Sublease 23 July 2011; third, it reflected the amount of rent 550 Foods was to pay directly to B.V. Belk, Jr. (or his assigns).
The Sublease Amendment did not extend, or purport to extend, the term of the Ground Lease beyond March 2007. The Sublease Amendment did not alter the provision of the Sublease that states: "[I]f the [Ground] Lease terminates, this Sublease shall terminate[.]" Shortly after entering into the Sublease Amendment, 550 Foods took possession of the grocery store building as tenant under the Sublease, and it has operated "Compare Foods" there since September 2005.
On 19 September 2007, B.V. Belk, Jr. conveyed his ownership interest in the grocery store building, as well as his interests as tenant under the Ground Lease and as landlord under the Sublease to BVB Properties. That same day, East Town purchased the shopping center from BVB Properties. Notably, immediately preceding East Town's acquisition of East Town Market Shopping Center, BVB Properties held fee title to the land, title to all of the improvements on the land, including the grocery store building, and was the landlord and tenant under the Ground Lease and landlord under the Sublease.
Accordingly, when it purchased the shopping center, East Town acquired all of BVB Properties' rights, title and interest in the shopping center, including the leases. When East Town purchased the property, the Ground Lease's initial twenty-year term had ended approximately five months earlier in March 2007. The parties dispute whether its term was extended beyond March.
In January 2011, Mary Lee Mrochek, counsel for 550 Foods, sent written notice to East Town that it was "exercising its option to extend the term of the above-referenced sublease for another five years." By letter dated 20 April 2011, East Town informed 550 Foods that the Sublease was "subject and subordinate to" the Ground Lease and that the Ground Lease was currently operating on a month-to-month basis. East Town further explained that if the Ground Lease does not continue on a month-to-month basis, then the Sublease will no longer remain in effect and 550 Foods would have no further right to occupy the premises.
On 27 June 2013, East Town executed the Termination of Ground Lease Agreement, which effectively terminated the Ground Lease in full. By letter dated 28 June 2013, East Town notified 550 Foods of the termination. It informed 550 Foods that because the Sublease was subject to and subordinate to the Ground Lease, the Sublease was also terminated. East Town gave 550 Foods until 23 July 2013 to vacate the premises. The Sublease was in the second of six five-year renewal periods and was not due to expire until 23 July 2016. On appeal, 550 Foods argues that East Town's unilateral termination of the Ground Lease was ineffective to the extent that the termination affected the term of the Sublease.
II. Analysis
A. Renewal of Ground Lease
550 Foods argues that the trial court erred in finding that the Ground Lease was operating as month-to-month tenancy because both the first and second renewal options under the Ground Lease and Sublease were effectively exercised. We disagree.
This Court reviews a superior court's order to determine whether the trial court's findings of fact are supported by any competent evidence, and we review de novowhether the trial court's conclusions of law are supported by its findings of fact. Steinkrause v. Tatum,201 N.C.App. 289, 291-92, 689 S.E.2d 379, 381 (2009), aff'd per curiam,364 N.C. 419, 700 S.E.2d 222 (2010).
The trial court made the following pertinent findings of fact:
35. The Sublease Amendment did not extend, or purport to extend, the term of the Ground Lease beyond its initial 20-year term, which was set to expire by March 2007.
36. Moreover, there is no record of a notice being given by any person, including the tenant under the Ground Lease, or the tenant under the Sublease, to the landlord under the Ground Lease, exercising or purporting to exercise the first option to extend the term of the Ground Lease beyond its initial 20-year term.
37. Nor did the Sublease Amendment amend the provision of the Sublease that states that "[i]f the [Ground] Lease terminates, this Sublease shall terminate[.]"
On appeal, 550 Foods challenges these findings as being unsupported by competent evidence. Specifically, 550 Foods argues that there is evidence in the record to show that both the first and second renewal options under the Ground Lease were effectively exercised. Alternatively, assuming arguendothe renewals were not exercised, 550 Foods argues that based on certain principles of contract law, the trial court erred in finding that the Ground Lease was not extended beyond its initial term.
Because the Ground Lease's renewal options were required to be exercised successively, this Court must initially discern whether there is evidence in the record to show that the first renewal was exercised in 2005, as 550 Foods contends. Given that East Town did not become a party to the Ground Lease until after the expiration of the twenty-year term, it would have been up to the then current ground tenant, B.V. Belk, Jr., to provide written notice to the then ground lessor, BVB Properties, Inc., of his intent to renew the Ground Lease.
Although 550 Foods stipulated that there was no record of any written notice indicating such, 550 Foods argues on appeal that there is "no affirmative evidence in the record that the notice was notgiven." (Emphasis added). Further, 550 Foods argues that ultimately the written-notice requirement is "irrelevant" because the Sublease term was extended until 23 July 2011 via the Sublease Amendment (which was executed by BVB Properties, B.V. Belk, Jr. and 550 Foods). Accordingly, 550 Foods reasons that when the Sublease Amendment took effect, the Ground Lease term by extended by "necessity." In its brief, 550 Foods states: "A subtenant can never have more term than his sublessor has.... A grant of an option for years to a subtenant, without the extension of the underlying lease, would be ineffective."
The record here is clear-there is no evidence that B.V. Belk, Jr. provided written notice to extend the Ground Lease beyond its March 2007 termination date. Further, 550 Foods argument that the Ground Lease was extended by "necessity" when the parties executed the Sublease Amendment is unconvincing.
[P]rivity of estate is not established between the original landlord and the sublessee and the landlord has no direct action with respect to the covenants in the original lease as against the sublessee; there is neither privity of estate nor privity of contract as between the original landlord and a sublessee, and the sublessee can sue only his immediate lessor ... with respect to the lease.
Neal v. Craig Brown, Inc.,86 N.C.App. 157, 162, 356 S.E.2d 912, 915 (1987). "As a result, a sublessee may not exercise an option to renew granted to his sublessor in the original lease or demand such a renewal from the original landlord." Id.This is because "the rights of a sublessee are measured by the rights of his sublessor," and the termination of the primary lease generally terminates any dependent sublease. Id.at 163, 356 S.E.2d at 915-16. "This is true notwithstanding the fact that the sublease agreement contains options to renew." Id.at 163, 356 S.E.2d at 916 (citing 50 Am.Jur.2d Landlord and Tenant § 1195 (1970) ).
These well-settled rules mean that when the Ground Lease terminated, the dependent Sublease term ended as well. See id.(finding that termination of the original lease terminated any dependent sublease). Notably, these rules do not support 550 Foods' inverse argument that the renewal of the Sublease operated as an extension or renewal of the Ground Lease. If this was true, an inverse relationship between sublessor and sublesee would result. Although 550 Foods is correct in that a subtenant can never have more term than his sublessor, this means that 550 Foods, as subtenant, is the party whose term is cut short.
In the alternative, 550 Foods argues that the Ground Lease's notice requirement was waived because neither of the ground lessors, East Town, or BVB Properties before it, objected to the lack of written notice by the tenant until April 2011. 550 Foods' argument fails because it is not a party to the Ground Lease and, therefore, cannot assert waiver of a contractual term embodied in a contract to which it is not a party. See id.(holding that when the primary lease term expired without renewal, the sublessee could "neither exercise the option to extend contained in [the master] lease nor demand from defendants performance of the renewal option contained in the sublease").
Upon reviewing the record, we note that the Sublease Amendment does not reflect any agreement by the parties that an extension of the Sublease term warranted an automatic renewal of the Ground Lease term. It was contractually valid for the Sublease to be renewed despite the fact that the parties to Ground Lease had not renewed its lease term. The trial court found, and we agree, that the first option to extend the Ground Lease beyond its twenty-year term was not exercised. Accordingly, we decline to address 550 Foods' arguments pertaining to the second renewal option. We conclude that the trial court did not err in finding that the Ground Lease was operating as a month-to-month tenancy per the express terms of the agreement, which provided that any holdover after March 2007 "shall operate and be construed as a tenancy from month to month only."
B. Unilateral Termination of Ground Lease
550 Foods argues that the trial court erred in ruling in favor of East Town in the declaratory judgment action because the express and implied terms of the Ground Lease and the Sublease prohibited East Town's unilateral termination of the Ground Lease. We disagree.
550 Foods specifically contends that East Town's termination of the Ground Lease constituted a voluntary surrender that was invalid under Krider v. Ramsayto the extent that it injured 550 Foods' rights under the Sublease. Krider v. Ramsay,79 N.C. 354, 358 (1878) ("A [voluntary] surrender is never allowed to operate injuriously upon the rights of third parties, or to affect the estate of the underlessee."). 550 Foods contends: "East Town's attempted termination of the Ground Lease is without question a 'voluntary' termination in that it was not based on any default and was undertaken for the admitted purpose of trying to defeat the Sublease." Further, 550 Foods asserts that the voluntary surrender of the Ground Lease was ineffective because "Section 16 of the Ground Lease prohibits any terminations except for cause."
A surrender has been defined as follows:
A surrender of a lease involves more than the mere abandonment of the premises by a tenant, as it requires a mutual agreement between the landlord and tenant to terminate the lease. A termination of a lease agreement occurs when the tenant surrenders the tenancy and the landlord accepts the tenant's surrender. It follows from the above that the surrender of a lease may not be forced upon a landlord by the unilateral actions of the tenant, and although a tenant may attempt to surrender a lease, the lease will not be terminated unless the landlord accepts the surrender. Thus, no 'surrender of lease' occurs if the landlord refuses to accept the tenant's surrender of the premises.
49 Am.Jur.2d Landlord and Tenant § 208 (2013).
Because North Carolina has limited authority on the issue of a surrender of a primary lease and its effect on a subtenant, we find cases from other jurisdictions to be instructive. In Hessel v. Johnson,129 Pa. 173, 177, 18 A. 754, 754 (1889), the Supreme Court of Pennsylvania held that "a tenant for a certain term, or for life, who has under-let, has no right to surrender his lease, to the prejudice of the subtenant." Thereafter, the Supreme Court of Arkansas held that "[w]here there is no covenant against subletting, a lessee has a right to sublease all or any part of the leased premises, and when he does so he cannot by a surrender of the leased premises to the lessor defeat the rights of his undertenant." Mitchell v. Young,80 Ark. 441, 441, 97 S.W. 454, 454 (1906). The Supreme Court of Arizona suggested that "[i]t would be unconscionable where the express terms of a sublease have not been violated to allow the landlord and lessee to terminate the original lease by their mutual consent over the protest of the subtenant."Byrd v. Peterson,66 Ariz. 253, 257-58, 186 P.2d 955, 958 (1947) ; e.g., State ex rel. Frazier & Oxley, L.C. v. Cummings,212 W. Va. 275, 281, 569 S.E.2d 796, 802 (2002).
The law is clear-the voluntary surrender of a lease by a lessee to his or her lessor cannot operate to defeat the estate of the subtenant. However, in each of the cases cited above, including the North Carolina Ramsaycase, the surrender involved a primary lease that was fully operational, meaning the lease term had not expired. Thus, generally, surrender involves a primary lease that has not otherwise expired or terminated. However, a subtenant's rights differ after a primary lease has terminated. Specifically, the "termination of the original lease terminates any dependent sublease." Craig Brown,86 N.C.App. at 163, 356 S.E.2d at 916 (citation omitted).
When East Town became a party to the Ground Lease in September 2007, the Ground Lease's twenty-year term had expired without extension, and, as we found in the above issue, it was operating as month-to-month tenancy. Therefore, 550 Foods' argument is inapplicable on these facts because the Ground Lease was not, in fact, surrendered given that its twenty-year term had expired.
550 Foods also contends that East Town's termination of the Ground Lease and the Sublease amounted to a breach of contract. 550 Foods specifically argues that there is a "plain and simple agreement between East Town and 550 Foods that, as long as 550 Foods abides by the terms of the Sublease, it can use and enjoy the Premises for the full, extended Sublease term." 550 Foods directs our attention to Section 16 of the Ground Lease that provides "this Lease shall not be terminated for any cause except as expressly provided herein." Because there was no causation to prompt the termination, 550 Foods argues that East Town breached the parties' contract.
We are not persuaded. Should the Ground Lease have been extended beyond its initial twenty-year term, 550 Foods' argument would be worth exploring. However, this Court has concluded that the original lease term expired, and, subject to the provisions of the Ground Lease, the leasehold was converted to a month-to-month tenancy. Statutorily, a month-to-month tenancy requires only a seven-day notice to quit. N.C. Gen.Stat. § 42-14 (a month-to-month tenancy may be terminated by a notice to quit of seven days). A showing of causation is unnecessary to effectively terminate a month-to-month tenancy.
550 Foods entered into the Sublease knowing that if the Ground Lease terminated-a contingency beyond 550 Foods' control-its tenancy rights would similarly terminate upon a seven-day notice to quit. The trial court found, and we agree, that East Town's 28 June 2013 letter to 550 Foods informing 550 Foods that it had entered into the Termination of Ground Lease Agreement constituted proper notice to quit the premises by 23 July 2013.
550 Foods also argues that East Town breached the implied covenant of good faith and fair dealing by terminating the Ground Lease prior to the expiration of the Sublease term-an alleged act that "The Sublease Does Not Sanction." This covenant requires that "[a]ll parties to a contract must act upon principles of good faith and fair dealing to accomplish the purpose of an agreement, and therefore each has a duty to adhere to the presuppositions of the contract for meeting this purpose." Maglione v. Aegis Family Health Centers,168 N.C.App. 49, 56, 607 S.E.2d 286, 291 (2005).
Interestingly, after reviewing 550 Foods' argument, it appears that 550 Foods has inadvertently articulated why its argument lacks merit. 550 Foods recognizes that section 2 of the Sublease provides: "If the [Ground] Lease terminates, this Sublease shall terminate, subject to the provisions of the [Ground] Lease." Thereafter, 550 Foods states that this lease term "is merely a reiteration of well-established North Carolina law regarding a sublease's dependence on the underlying lease." This well-established rule is that "the rights of a sublessee are measured by the rights of his sublessor, [ ] and termination of the original lease terminates any dependent sublease." Craig Brown,86 N.C.App. at 163, 356 S.E.2d at 915-16 (citations omitted). However, despite this rule, 550 Foods avers that the language in section 2 of the Sublease "does not give East Town any right to terminate the Sublease" because the Ground Lease "prohibits any termination other than one for cause."
To the contrary-East Town derived its contractual right to terminate the Sublease, in part, because of section 2, which clarified that the Sublease was subordinate to the Ground Lease. Further, as discussed above, East Town had unilateral authority to terminate the Ground Lease upon a seven-day notice to quit because the Ground Lease was operating as a month-to-month tenancy.
Based on the facts before it, the trial court concluded that East Town "made, in good faith, what it believed to be a sound business decision based on a reasonable view of its contractual rights" to terminate the Ground Lease. We agree. The record supports the trial court's finding that East Town fairly bargained for its rights under the Ground Lease and Sublease, which included its right to terminate the Ground Lease. As such, we cannot conclude that East Town violated the implied covenant of good faith and fair dealing merely by exercising its contractual rights.
III. Conclusion
After a careful review of the record, we conclude that the trial court correctly found, based on competent evidence, that the Ground Lease was not extended beyond its initial twenty-year term. The Ground Lease began operating on a month-to-month basis after March 2007, which made it such that causation was no longer required for East Town to terminate the Ground Lease. Further, because the Sublease was subordinate to the Ground Lease and specifically provided that "[i]f the [Ground] Lease terminates, this Sublease shall terminate," we hold that the trial court did not err in concluding 550 Foods' right to occupy the grocery store building ceased after East Town terminated the Ground Lease. East Town was entitled to declaratory judgment and order for summary ejectment in its favor. Thus, the trial court did not err in dismissing 550 Foods' counterclaims for declaratory judgment, breach of contract, and damages. To the extent that we have not addressed each of 550 Foods' specific arguments on appeal, we deem the arguments to be without merit and unnecessary to the outcome of this appeal. We affirm the trial court's order.
Affirmed.
Judge CALABRIA concurs.
Judge DILLON concurs in result.
Report per Rule 30(e).
Opinion
Appeal by defendant from order entered 25 August 2014 by Judge Jesse B. Caldwell, III in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 June 2015.