NO. COA13-1402

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.                                    Buncombe County
                                      No. 11 CRS 488
JOSHUA NEAL KING


    Appeal by defendant from judgment entered 14 January 2013

by Judge Alan Z. Thornburg in Buncombe County Superior Court.

Heard in the Court of Appeals 21 May 2014.

    *Attorney General Roy Cooper, by Assistant Attorney General
    LaShawn S. Piquant, for the State.*

    *M. Alexander Charns for defendant-appellant.*


    BRYANT, Judge.


    Where a physician testified to common characteristics she

had observed in sexually abused children, the trial court did

not err in allowing her testimony, and where the trial court

denied the State's motion to hold defense counsel in criminal

contempt, defendant did not receive ineffective assistance of

counsel.

    On 12 September 2011, a Buncombe County Grand Jury indicted

defendant on thirteen counts of indecent liberties with a child,

two counts of rape of a child by an adult, and eleven counts of statutory rape. Each indictment alleged that the victim was Kimberly[1], a girl age twelve or thirteen years old depending on the date of the offense. A jury trial commenced during the 7 January 2013 Criminal Session of Buncombe County Superior Court, the Honorable Alan Z. Thornburg, Judge presiding.

The evidence presented tended to show that Kimberly was born in 1997 and that she had two younger brothers. From the time she was six months old, Kimberly lived with her paternal grandmother. In 2009, when she was twelve years of age, Kimberly left her grandmother's residence and went to live with her mother and two brothers. Kimberly's mother was living with defendant Joshua Neal King, whom she later married. Living with her mother provided Kimberly with more freedom: "I got to go out with my friends a lot more. They got to come over a lot more. I used to drink and do drugs." Kimberly testified that she and her mother used drugs together.

On the evening of 16 March 2010, Kimberly's mother was at work; Kimberly was at home with defendant and her two brothers.

> A. . . . I went to bed earlier that night and woke up and [defendant] was on top of me, and I had all my clothes off and

---

[1] Pursuant to Rule 3.1(b) of our Rules of Appellate Procedure, we use a pseudonym to protect the identity of the juvenile.

> I was in their bed.
>
> . . .
>
> Q.   Do you remember what he had on?
>
> A.   A shirt.
>
> . . .
>
> Q.   And what happened?
>
> A.   He did what I said he did.
>
> Q.   Okay. Is that when you said that he put his penis in your vagina?
>
> A.   Yes.
>
> Q.   What did you do?
>
> A.   I yelled for my brother.

Kimberly testified that defendant had her perform sexual acts on many occasions from March through August 2010.

Detective David Shroat, working in the Criminal Investigations Unit of the Buncombe County Sheriff's Department, became involved with the case on 30 August 2010 after receiving a report from the Department of Social Services. Detective Shroat testified that per the report, "[Kimberly's] mother was working nights and [Kimberly] went to bed. And at some point in time, she woke up and [defendant] was on top of her, and she screamed." Detective Shroat spoke with defendant on 21 September 2010. After having his statement transcribed and read

back to him, defendant verbally acknowledged his words and signed his name to the statement. The statement was admitted at trial.

Per his statement, defendant "drunk probably a twelve pack" one night; he told the children to go to sleep; and he went to bed. At some point, defendant thought his wife had gotten into the bed. "I discovered it was [Kimberly] . . . I told her to go back to her room. . . . I did rub on her under the blanket with my penis. I don't know if I penetrated her or not." Defendant did not admit to any other instance of sexual contact or activity with Kimberly.

Pediatrician Dr. Sarah Monahan-Estes, working at the Mission Children's Hospital, examined Kimberly on 29 August 2012. Dr. Monahan-Estes testified to the results of her examination and in part to common characteristics she had observed in sexually abused children.

Following the close of the evidence, the jury found defendant not guilty on twenty-five charges and found defendant guilty on one count of indecent liberties with a child occurring on 16 March 2010. The jury also found as an aggravating factor that "Defendant took advantage of a position of trust or confidence . . . to commit the offense." The trial court

entered judgment in accordance with the jury verdict and sentenced defendant to an active term of 16 to 20 months. Defendant appeals.

_____

On appeal, defendant raises the following issues: (I) whether the trial court erred by allowing a physician to testify; and (II) whether defendant received ineffective assistance of counsel.

*I*

Defendant first argues that the trial court erred in allowing Dr. Monahan-Estes, the pediatrician who examined Kimberly following her report of sexual assaults, to testify as to Kimberly's veracity. Specifically, defendant contends that Dr. Monahan-Estes' written report, which was published to the jury, explained why Kimberly did not initially tell the whole truth and that Dr. Monahan-Estes' testimony presumed Kimberly was telling the truth and presumed a history of sexual abuse. We disagree.

Defendant cites the opinion of this Court in *State v. Ryan* for the proposition that "[o]ur appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling

the truth is inadmissible evidence." ___ N.C. App. ___, ___, 734 S.E.2d 598, 604 (2012) (citation and quotations omitted), *rev. dismissed*, 366 N.C. 433, 736 S.E.2d 188, *and writ denied*, *rev. denied*, 366 N.C. 433, 736 S.E.2d 189 (2013).

Initially, we note that Dr. Monahan-Estes was not formally qualified as an expert. To address this discrepancy, we find guidance in the opinion of our Supreme Court in *State v. Aguallo*, 322 N.C. 818, 370 S.E.2d 676 (1988), wherein the defendant challenged the admission of testimony from two witnesses addressing the typical characteristics of sexually abused children. One witness, a Department of Social Services' case worker, having been employed as such for fourteen years, had investigated between twenty-five and thirty cases of child sexual abuse. The victim confided in the witness about the abuse the defendant had inflicted. The second witness, a Sheriff's Department juvenile investigator, had been employed as such for seven years and had investigated over one hundred cases of child sexual abuse. *Id.* at 820—21, 370 S.E.2d at 677. The defendant argued on appeal that the evidence was improper because "the witnesses were not qualified as experts and [] their testimony fail[ed] as lay opinion because it was not rationally based on the perceptions of the witness." *Id.* at

820, 370 S.E.2d at 677. Our Supreme Court reasoned that "[i]t [was] evident that the nature of their jobs and the experience which [the witnesses] possessed made them better qualified than the jury to form an opinion as to the characteristics of abused children." *Id.* at 821, 370 S.E.2d at 677. The Court went on to hold that "the finding that [each] witness [was] an expert is implicit in the trial court's ruling admitting the opinion testimony." *Id.; see also* N.C. Gen. Stat. § 8C-1, Rule 702(a) (2013) ("If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion . . . .").

Dr. Monahan-Estes' testimony began with her educational background, including where she completed her undergraduate studies, her medical school education, where she completed her pediatric residency, and where she completed an additional two-year fellowship in child abuse pediatrics – during which she saw only sexually abused, physically abused, or neglected children. Dr. Monahan-Estes testified that she currently worked in a child abuse clinic seeing children who are suspected of having any history of sexual abuse, physical abuse or neglect. During the

course of the investigation into allegations of sexual abuse, Dr. Monahan-Estes interviewed Kimberly.

At trial, Dr. Monahan-Estes testified that when a child is suspected of suffering from abuse, "you want to assure that they don't have any injuries or issues that are resulting because of that abuse that need medical attention or mental health attention." Dr. Monahan-Estes testified to the typical process she goes through in performing a child medical evaluation, with specific regard to an evaluation done where sexual abuse is suspected. She also testified to the limitations of the examination and common behaviors she has observed in her experience.

> [W]e very rarely see kids who [sic] the abuse or trauma has occurred and then they immediately tell someone so we can examine them. . . . In the cases that I typically see in clinic, these disclosures have occurred days, weeks, months, years after the sexual abuse has occurred . . . .
>
> . . .
>
> [W]e see all kinds of behavioral and emotional dysfunction or disorders in children who have a history of sexual abuse. These kids typically have an increased frequency of being depressed or having mental health issues, substance abuse. They tend to act out, aggressive behavioral issues in school. They have increased risk of school failure. These children typically get in trouble with

the law, delinquency, they'll be arrested, they sexually act out. There's a whole host of issues that are increased in children who have a history of sexual abuse.

We hold that the trial court's qualification of Dr. Monahan-Estes as an expert in pediatric medicine as well as the evaluation and treatment of child sexual abuse is implicit in the trial court's admission of her testimony regarding common behaviors in children who have suffered from sexual abuse.

In challenging the admission of Dr. Monahan-Estes' written report into evidence, defendant contends that Dr. Monahan-Estes "explained why [Kimberly] didn't initially tell the entire truth." We first note that defendant did not object to the admission of the report at trial. Thus, the admission of this evidence would be subject to plain error review only, and upon the request of defendant. Defendant has failed to request plain error review of this issue. Further, defendant has failed to make Dr. Monahan-Estes' report a part of the record on appeal. Therefore, we are precluded from considering the contents of the report, and we must consider defendant's argument abandoned. *See* N.C. R. App. P. 9(a) ("In appeals from the trial division of the General Court of Justice, review is solely upon the record on appeal . . . ."); *Neal v. Craig Brown, Inc.*, 86 N.C. App. 157, 161, 356 S.E.2d 912, 915 (1987) ("This Court may not

consider documents which have not properly been made a part of the record on appeal." (citing *Elliott v. Goss*, 254 N.C. 508, 119 S.E.2d 192 (1961))).

Defendant challenges Dr. Monahan-Estes' testimony as presuming that Kimberly was telling the truth. Specifically, defendant challenges the following:

> Q. . . . In your training and experience, are there reasons that you have personally observed that children may not always tell all of the allegations to start?
>
> . . .
>
> THE WITNESS: Yes. It's very common that a child either does not initially disclose or only partially discloses.
>
> One of the biggest issues is frequently the alleged perpetrator is a parent or a parental figure or someone that they love and trust, so they don't want to get them in trouble. They're ashamed, they're afraid, they've been threatened or bribed to try not to disclose.
>
> If another family member who is not the alleged perpetrator, but say another parent or another parental figure doesn't believe the child, then they'll frequently encourage them not to tell, or children sometimes – there will be negative consequences to their disclosure. So they tell a little bit about what happens and then all kinds of things come into play. They're taken out of their home, they're taken away from their siblings, they're taken away from both of their parents. And they see these negative consequences and they don't want them to

> continue, so they'll only tell little bits
> of what happened.

In *State v. Hall*, our Supreme Court, analyzing its prior opinion in *State v. Kennedy*, 320 N.C. 20, 357 S.E.2d 359 (1987), stated

> that expert testimony on the symptoms and characteristics of sexually abused children is admissible to assist the jury in understanding the behavior patterns of sexually abused children. Furthermore, [the Court] allowed evidence that a particular child's symptoms were consistent with those of sexual or physical abuse victims, but only to aid the jury in assessing the complainant's credibility.

*State v. Hall*, 330 N.C. 808, 817, 412 S.E.2d 883, 887 (1992) (citation omitted); *compare State v. Stancil*, 355 N.C. 266—67, 559 S.E.2d 788, 789 (2002) ("In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred . . . such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." (citing *State v. Hall*, 330 N.C. 808, 818, 412 S.E.2d 883, 888 (1992)) (citations omitted)).

We view Dr. Monahan-Estes' testimony as properly providing common characteristics she observed in sexually abused children and a possible basis for those characteristics, and not opinion testimony on Kimberly's credibility.  Therefore, as there was no error by the trial court in allowing the testimony of Dr. Monahan-Estes, defendant's argument is overruled.

*II*

Next, defendant argues he was denied effective assistance of counsel.  Specifically, the trial court's denial of defense counsel's request for an evening recess following defense counsel having to defend himself against a criminal contempt charge prejudiced defense counsel's ability to represent defendant.  We disagree.

"The right to effective assistance of counsel includes the right to representation that is free from conflicts of interest."  *State v. Choudhry*, 365 N.C. 215, 219, 717 S.E.2d 348, 352 (2011) (citations and quotations omitted).  "When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness."  *State v. Augustine*, 359 N.C. 709, 718, 616 S.E.2d 515, 524 (2005) (quoting *State v. Braswell*, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985)).

In order to meet this burden defendant must satisfy a two part test.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 694 (1984)); *see also, e.g., Choudhry*, 365 N.C. at 219, 717 S.E.2d at 352 ("[W]hen the claim of ineffective assistance is based upon an actual, as opposed to a potential, conflict of interest . . . a defendant may not be required to demonstrate prejudice under *Strickland* to obtain relief." (citations omitted)).

Defendant's argument is predicated on the assertion that defense counsel was burdened by a conflict of interest; however, the record does not reveal such a conflict.

On 9 January 2010, in the morning of the third day of trial, the prosecutor filed a motion requesting that defense counsel be held in criminal contempt as well as a corresponding

motion for a mistrial following defendant's cross-examination of the victim the day before. In its motion, the prosecutor contended that following an in camera hearing to address the admissibility of evidence in light of Rule 412, "Rape or sex offense cases; relevance of victim's past behavior," and the trial court's exclusion of the evidence proffered, defendant proceeded to question Kimberly about her prior sexual encounters in violation of the court's order. A hearing on the State's motion was held that morning. A review of the trial transcript reveals a brief hearing. The State presented its motion; defense counsel introduced an attorney who would represent him; defense counsel's attorney notified the court that he was unfamiliar with any of the underlying facts – including the allegations in the State's motion, and asked that if the trial court was "seriously considering" the motion that the hearing be postponed. The State consented to a postponement of the hearing; at which point, the trial court declared that the State's motion was one for direct contempt and that the court had reviewed the transcript of defense counsel's examination. The trial court ruled that defense counsel "did not act willfully or with gross negligence, and the acts were not done deliberately and purposefully in violation of the law without

regard or justification or excuse, and [this court] fails to find him in contempt of court." The trial court subsequently denied the State's motion for a mistrial. Following this denial, defense counsel asked for an adjournment: "I'm very offended by this and it's sort of knocked me off my game, if you will. And I don't want to be sitting here thinking about my issues about this when I'm supposed to be giving my best interest to my client." Defense counsel requested an adjournment until the next morning "to kind of calm down and get over this[.]" At 11:38 a.m., the trial court called a recess until 2:00 p.m.

We see no conflict of interest between trial counsel and defendant. Furthermore, defendant neither points to an error committed as a result of trial counsel's participation in the criminal contempt hearing nor asserts what burden would have been alleviated by an overnight recess. Even though counsel was the subject of a contempt hearing during his representation of defendant, counsel was found to be not in contempt of court. There is nothing in the record to support defendant's assertion of a conflict of interest. On the contrary, defendant was found not guilty on twenty-five of twenty-six charges considered by the jury. Defense counsel's zealous representation of

defendant, clearly revealed in the record, can in no way be deemed ineffective based on a conflict of interest or any other theory.  Defendant has failed to show that defense counsel's performance fell below an objective standard of reasonableness. *See Braswell*, 312 N.C. at 561—62, 324 S.E.2d at 248. Accordingly, we overrule defendant's argument.

No error.

Judges CALABRIA and GEER concur.