MURPHY, Judge.
James Michael Latham, Jr. ("Defendant") appeals from two sex offense convictions under N.C.G.S. § 14-27.4(a)(1)[1] (first-degree sex offense with a child) and N.C.G.S. § 14-202.1 (indecent liberties with a child). Defendant argues the trial court erroneously admitted hearsay testimony under North Carolina Evidence Rule 803(4). Defendant also argues the trial court erred by admitting the testimony of one expert and two lay witnesses because that testimony improperly vouched for the credibility of the minor victim in this case. For the reasons that follow, we find no error.
BACKGROUND
In the latter half of 2013, Defendant was living with Charlene Morici at Charlene's grandmother's house in Union County. Charlene had an eight-year-old daughter, Vanessa[2] . Sometime in July 2014, Defendant and Charlene ended their relationship, and Defendant moved out of the home. In August 2014, Charlene considered resuming her relationship with Defendant. She asked Vanessa "[w]ould you want [Defendant] back in your life?" Vanessa said no because that would bring back "too many bad memories." According to Charlene's testimony, when she asked Vanessa about her "memories" of Defendant, Vanessa started crying and stated, "I can't say anything because he said people will hurt him and he will go to jail for a really long time." Charlene then told Vanessa, "You need to tell me what happened." Vanessa responded, "He messed with me down there." Vanessa was referring to Defendant, and the time she was referring to was a night in 2013 when she alleged that Defendant came into her bedroom, got into her bed, and sexually molested her.
Subsequent to Vanessa's revelations, Charlene filed a report with the Union County Sherriff's Office and met with Sergeant Tabitha Lockey ("Sergeant Lockey"). The Sheriff's Office referred Vanessa to the Treehouse Children's Advocacy Center ("Treehouse Center"), a non-profit organization where children are referred by social services and law enforcement during the initial phases of child abuse investigations. On 3 September 2014, Ms. Alaka Ayres ("Ayres"), an employee of the Treehouse Center, conducted a "forensic interview" with Vanessa which was filmed in its entirety. The video recording of the forensic interview was entered into evidence during Defendant's trial.
On 27 October 2014, approximately two months after Vanessa's forensic interview with Ayres at the Treehouse Center, Defendant was indicted for (1) first degree statutory rape of a child; (2) first degree sexual offense with a child; and (3) indecent liberties with a child. The date range of the offenses was 1 October 2013 through 31 October 2013. These indictments were superseded by indictments issued 3 August 2015, which alleged the date range of the offenses to be 1 December 2013 to 31 December 2013. Defendant was tried on these charges in July 2016, and this trial ended in a mistrial. Defendant was tried again on 27-28 March 2017.
The State presented several witnesses at trial, including Vanessa, who was then 13 years old. Vanessa testified that in December 2013, she heard her mother and Defendant arguing while she was sleeping in her room. After the two finished arguing, Defendant came into Vanessa's room and "started laying down." Defendant started rubbing Vanessa's stomach under her clothes and went into her pants "under [her] underwear." Defendant then "started rubbing [her] private part" and it was on "the inside." After this, Defendant attempted to put his penis in Vanessa's mouth, but he did not because she told him "no." Then, Defendant "showed [Vanessa] how to grab his private part and move it around" and told her she "was doing a good job." Vanessa also testified that Defendant's penis was "hairy ... hard, and it was like a tube," and when Defendant "tried to put his private part into mine ... it hurt."
Ayres, the forensic interviewer at the Treehouse Center also testified. Ayres has a bachelor's degree in psychology and ten years of professional experience in the area of child protective services. Ayres stated that a forensic interview is a "neutral fact-finding interview" and described the forensic interview process used by the Treehouse Center in detail.
Q. Okay. And just so the jury understands, what exactly is a forensic interview?
A. What a forensic interview is is a structured conversation that an interviewer has with a child. Children are referred when they are between the ages of 3 and 18. A forensic interview is always recorded. And it's an interview that is geared towards eliciting as much detail as the child is able to provide about something they have experienced.
Ayres further explained that a child comes to the Treehouse Center when there is an open investigation related to that child and they have been referred from either social services or from a local law enforcement agency. Ayres also explained the different types of "disclosures" children make regarding sexual abuse. According to Ayres, a "disclosure" in this context is defined as "a child making an outcry of something that they have experienced." For example, a child that has made an "active disclosure" has usually made a statement to somebody else. Whereas an "accidental disclosure" may occur when a child writes something down in a journal and the contents of the journal are read by an adult.
Upon providing this background, Ayres was tendered as an expert in "child abuse disclosure patterns and forensic interviewing." She then described her interview with Vanessa. Ayres testified that Vanessa made an "active disclosure" of penile-vaginal penetration by Defendant.
A. Vanessa disclosed penile-vaginal penetration during the forensic interview ...
....
Q. And what type of disclosure did Vanessa give?
A. Vanessa was shy. Vanessa was quiet, but she did present an active disclosure. And she was able to share the details and she was able to share additional details when I followed up with clarifying questions about the details.
Q. And based on your training and experience, is it common for children to have a delayed disclosure, meaning that they don't disclose the abuse immediately after it happened?
A. It is very, very common for children to delay disclosure.
Ayres also testified that Vanessa received a medical examination by a physician. The State tendered the video of the September 2014 forensic interview video, and Defendant objected to the introduction of the video under Rule 403, arguing its "cumulative" nature was unfairly prejudicial. Defendant also requested a limiting instruction that the video was "not to be taken as the truth of the matter asserted but only as corroboration." Defendant's Rule 403 objection and request for a hearsay limiting instruction were overruled, and the video was admitted as substantive evidence. The video was then played to the jury.
Defendant presented no evidence, and the jury found Defendant guilty of first-degree sexual offense with a child and taking indecent liberties with a child. By judgments entered 30 March 2017, Defendant was sentenced to an active prison term of 276 to 392 months for first-degree sexual offense, and a consecutive term of 19 to 32 months for the indecent liberties conviction. Defendant timely appeals.
ANALYSIS
A. Hearsay & Rule 403 Objections
Defendant argues the trial court erred by denying his request for a hearsay limiting instruction and by admitting the 3 September 2014 forensic video interview as substantive evidence. He also argues that the trial court erred by denying his motion to suppress based upon a Rule 403 objection. We address each argument in turn.
1. Hearsay
Defendant first argues that the video of Vanessa's forensic interview with Ayres included hearsay statements that were not admissible under any applicable hearsay exception.
"When preserved by an objection, a trial court's decision with regard to the admission of evidence alleged to be hearsay is reviewed de novo ." State v. Johnson , 209 N.C. App. 682, 692, 706 S.E.2d 790, 797 (2011). In order to necessitate a new trial based on an evidentiary error, Defendant must show prejudice. State v. Jacobs , 363 N.C. 815, 825, 689 S.E.2d 859, 865-66 (2010). "Evidentiary error is prejudicial when there is a reasonable probability that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." Id. (citation and internal quotation marks omitted).
Assuming that the trial court erred in admitting the videotape into evidence, Defendant is unable to show prejudicial error. Vanessa's in-trial testimony directly implicated Defendant and she made substantially identical statements to the material allegations she made during her 3 September 2014 forensic interview. Vanessa testified that Defendant rubbed her "private part" on "the inside" and "showed [Vanessa] how to grab his private part." During direct examination, Vanessa also described Defendant's penis was "hairy," "hard," and "like a tube." In sum, Vanessa's trial testimony clearly conveyed to the jury that she believed that Defendant sexually molested her one night in December 2013. Vanessa's credibility as a witness was a matter for the jury to determine. See State v. Green , 296 N.C. 183, 188, 250 S.E.2d 197, 200-201 (1978) ("The credibility of a witness's identification testimony is a matter for the jury's determination...."); see also State v. Hall , 330 N.C. 808, 822, 412 S.E.2d 883, 890 (1992) (stating that "[w]hen the complainant testifies at trial that she has been sexually assaulted, the jury is given the unique and exclusive opportunity to access the credibility of her story, both on direct and cross examination."). Accordingly, since Defendant failed to show "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached," we hold that the admission of the forensic interview video was not prejudicial, reversible error.
2. Rule 403 Objection
Having concluded that Defendant failed to show prejudicial error in the admission of the forensic interview, we must next address Defendant's contention that, because the jury heard other testimony corroborating Vanessa's statements, the forensic interview was cumulative under Rule 403 and should have been excluded on that basis.
Rule 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2017). "Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." State v. Coffey , 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990). "The trial court enjoys broad discretion to admit or exclude evidence under Rule 403, and will be reversed only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." State v. Chappelle , 193 N.C. App. 313, 321, 667 S.E.2d 327, 332 (2008) (citing State v. Anderson , 350 N.C. 152, 175, 513 S.E.2d 296, 310 (1999) ) (citation and internal quotation marks omitted).
As stated in the preceding section, the jury heard in-trial testimony containing statements substantially similar as the material allegations made during the interview. However, the introduction of substantially similar testimony does not necessitate exclusion of evidence under Rule 403. Rather, the testimony is excludable only if its probative value is substantially outweighed by "considerations of undue delay, waste of time, or needless presentation of cumulative evidence ." N.C.G.S. § 8C-1, Rule 403 (emphasis added). The weighing of the probative value of the interview against any consideration of needless presentation rested firmly within the discretion of the trial court. Based on our review of the forensic interview and other testimony presented at trial, we conclude the trial court's determination that the interview was not a needless presentation of cumulative evidence was supported by reason. The trial court did not abuse its discretion in failing to exclude the forensic interview under Rule 403.
B. Improper Vouching Testimony: Expert Witness
Defendant argues the trial court plainly erred by admitting the following testimony from State's expert witness, Ayres, about sexual abuse disclosures from children:
State: Ms. Ayres, can you explain to the jury exactly what a disclosure is and then the different types of disclosure in child abuse cases.
Ayres: A disclosure is a child making an outcry of something that they have experienced.
Defendant argues that Ayres's testimony, which defined disclosure as "an outcry of something that they have experienced," was tantamount to an expert opinion that the events Vanessa described in her disclosure "actually happened." We disagree, for not only does Defendant's argument mischaracterize Ayres's testimony, but it also overlooks a critical distinction between her testimony and testimony from other cases where our appellate courts held that an expert witness impermissibly vouched for the credibility of the minor victim in a child sex offense prosecution.
We apply "the plain error standard of review to unpreserved instructional and evidentiary errors in criminal cases." State v. Maddux , --- N.C. ----, ----, 819 S.E.2d 367, 371 (2018). In order "to demonstrate that a trial court committed plain error, the defendant must show that a fundamental error occurred at trial. To show fundamental error, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." Id. (citations and internal quotation marks omitted). "Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings." State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, alterations, and internal quotation marks omitted).
In State v. Stancil , our Supreme Court held:
In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has in fact occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.
State v. Stancil , 355 N.C. 266, 266, 559 S.E.2d 788, 789 (2002) (internal citations omitted) (emphasis added). In State v. Dixon , we applied Stancil and held that expert testimony from a clinical psychologist that a child victim had been sexually abused was inadmissible in the absence of "physical evidence to support a diagnosis of sexual abuse." State v. Dixon , 150 N.C. App. 46, 52, 563 S.E.2d 594, 598 (2002). Dixon challenged the following testimony from the psychologist:
Q. And what was your opinion?
A. My opinion was that she was sexually abused .
Q. And could you tell the jury some of the factors that led you to believe that [the minor] was sexually abused.
A. It was both the test and the interview data. She gave very explicit details, which would be highly unusual for a seven year old to be aware of. There were the interactions that she demonstrated with the anatomically correct dolls. The sequence of events that she talked about and how it had occurred. The statements that she had made all were consistent with a child who had been sexually abused and strongly indicated that sexual abuse had occurred.
Id. at 51-52, 563 S.E.2d at 597-598. (emphasis added). We held the admission of such an opinion was erroneous. Id. at 53, 563 S.E.2d at 598. Additionally, in State v. Ryan , we held that the following testimony from a doctor improperly vouched for the credibility of the minor victim.
Q. [H]ave you ever diagnosed or made a finding that [a] child is not being truthful?
A. I have done that on several occasions.
Q. Can you explain to the jurors what you look for, the clues that you look for, and do you do that in every case?
A. I do it in every case.
....
Q. Was there anything about your examination of [the child] that gave you any concerns in this regard?
A. That gave me concerns that she was giving a fictitious story?
Q. Yes.
A. Nothing. There was nothing about the evaluation which led me to have those concerns. And again, as I was getting into her history and considering this as a possibility, nothing came out.
State v. Ryan , 223 N.C. App. 325, 334, 734 S.E.2d 598, 604 (2012) (emphasis added). We concluded the doctor's testimony that she had no concerns that the child was giving a fictitious story was "tantamount to her opinion that the child was not lying about the sexual abuse." Id .
Here, although there was no physical evidence of sexual abuse, Ayres's testimony did not impermissibly vouch for the credibility of Vanessa. Ayres testified that "[a] disclosure is a child making an outcry of something that they have experienced." This testimony did nothing more than provide the jury and the court with a working definition of the term "disclosure" in the context of child sexual abuse investigations and related medical treatment. When Ayres provided the definition of "disclosure," she only spoke in general terms and had not yet begun to describe her recollection of Vanessa's interview. We view such testimony as providing common characteristics observed in sexually abused children, not an impermissible opinion on the credibility of Vanessa. See State v. King , 235 N.C. App. 187, 194, 760 S.E.2d 377, 381 (2014) (finding no error when the witness's testimony properly provided "common characteristics she observed in sexually abused children and a possible basis for those characteristics...."). Moreover, Ayres's testimony is distinguishable from cases such as Dixon and Ryan , as her definition of disclosure was in no way tantamount to an opinion that sexual abuse had in fact occurred or that the child was not lying. Ayres's testimony was not an impermissible comment on the credibility of Vanessa, the minor victim in this case. We find no error.
C. Improper Vouching Testimony: Lay Witnesses
Defendant's remaining argument contends the trial court plainly erred by admitting the testimony of two lay witnesses: Charlene and Vanessa's sister, Ashley.[3] Defendant specifically argues the admission of the following testimony was plain error because the State asked Charlene leading questions that elicited answers which improperly vouched for Vanessa's credibility:
State: [Mother], does [Vanessa] at that time, now, did [Vanessa]-has she ever gotten in trouble for lying before?
Charlene: No.
State: Okay.
Charlene: No.
Stat: She doesn't have a history of lying at home or at school?
Charlene: No.
....
State: Charlene, during the time that's passed since August 2014, has [Vanessa] ever said anything different about what happened to her?
Charlene: No. It's always been the same.
State: Did she ever say something that she was making this up?
Charlene: No.
Defendant also challenges a similar question asked of Ashley, which suggested that Vanessa's story has remained consistent over the years:
State: [Ashley], has [Vanessa] ever told you anything different than what she originally told you?
Ashley: No, ma'am.
The crux of Defendant's argument is that the net effect of these questions and answers invited the jury to improperly conclude that Vanessa was believable. Thus, Defendant contends the testimony of Charlene and Ashley amounted to an impermissible lay opinion about the truthfulness of another witness.
"Our case law has long held that a witness may not vouch for the credibility of a victim." State v. Giddens , 199 N.C. App. 115, 121, 681 S.E.2d 504, 508 (2009). "The question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone." State v. Solomon , 340 N.C. 212, 221, 456 S.E.2d 778, 784 (1995). As previously stated, to establish plain error, a defendant must show the error "was a fundamental error-that the error had a probable impact on the jury verdict." State v. Lawrence , 365 N.C. at 518, 723 S.E.2d at 334. "Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings." Id . (citations, alterations, and internal quotation marks omitted).
Here, Defendant cannot establish plain error because he cannot show the above cited testimony from Vanessa's mother and sister had a "probable impact on the jury verdict." Id . Prior to deliberations, the trial court provided the pattern cautionary instruction to the jury regarding the credibility, interest, bias, and partiality of witnesses:
You are the sole judges of the believability of a witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all, any part, or none of a witness' testimony. In deciding whether to believe a witness, you should use the same tests of truthfulness that you use in your everyday lives. Among other things, these tests may include the opportunity of the witness to see, hear, know, or remember the facts or occurrences about which the witness testified, the manner and appearance of the witness, any interest, bias, prejudice, or partiality the witness may have, the apparent understanding and fairness of the witness, whether the testimony is reasonable, and whether the testimony is consistent with other believable evidence in the case. (T 257-258)
See NC Pattern Jury Inst.-Crim. 101.15 Credibility Of Witness (2017). Thus, the members of the jury were informed that they may consider any potential interest or partiality Charlene might have toward her daughter. Likewise, the jury understood that it may consider any negative bias Charlene might harbor toward the Defendant (an ex-boyfriend who allegedly molested her daughter). Similarly, the jury was informed that it could consider any potential bias Ashley might have towards her younger sister when evaluating her testimony. Given the jury's ultimate role regarding the believability of these lay witnesses, and in light of the fact that Vanessa provided extensive testimony at trial, we cannot say that the admission of two lay opinions from Vanessa's close relatives had a probable impact on the jury's verdict. Accordingly, we conclude that the trial court did not plainly err.
CONCLUSION
Defendant has failed to establish prejudicial error from the trial court's admission of Vanessa's interview over his hearsay and Rule 403 objections. Defendant has failed to demonstrate that the trial court committed error in admitting expert witness testimony. Finally, Defendant has failed to establish plain error in the trial court's admission of lay witness testimony relating to the credibility of the minor victim. Accordingly, we find no prejudicial error.
NO PREJUDICIAL ERROR.
Report per Rule 30(e).
Judges DAVIS and INMAN concur.

N.C.G.S. § 14-27.4(a)(1) is now N.C.G.S. § 14-28.28.

We use pseudonyms to protect identities of the juvenile and for ease of reading. See N.C. R. App. P. 3.1(b) (2017).

We use a pseudonym to protect the identity of the minor.